**In re Roy Layne HOGUE, Anne D. Hogue, fka Anne Davenport, Debtors.**

**In re Patrick RENDA, Charlotte M. Renda, Debtors.**

**In re Leatha CROMWELL, Debtor.**

**Bankruptcy Nos. 2–87–01073, 2–87–01334 and 2–87–02983.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Oct. 8, 1987.

---

Robert H. Farber, Jr., Columbus, Ohio, for debtors.

Frank M. Pees, Worthington, Ohio, Chapter 13 trustee.

## ORDER DENYING CONFIRMATION

R.G. COLE, Bankruptcy Judge.

These cases have been consolidated for opinion because they raise a common issue of bankruptcy law: Do partial liquidation Chapter 13 plans, *i.e.*, plans which contemplate the sale or refinancing of the debtors' residences at or near the end of the plan term, meet the confirmation criteria of 11 U.S.C. § 1325(a). In each of these cases a sale or refinancing of the debtors' residence is required in order to generate the funds necessary to liquidate their Chapter 13 plans. Put differently, in the event that the debtors are unable to sell or refinance their respective residences as envisioned by their plans, they will be unable to consummate their plans and the holders of general unsecured claims will not receive the dividends proposed by the debtors. The facts set forth below bring this issue into focus.

### I. JURISDICTION

The Court has jurisdiction over the present cases pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. These are core proceedings which the Court may hear and determine. 28 U.S.C. § 157(b)(2)(L). The following constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule ("B.R.") 7052.

### II. FACTS

**A. In re Hogue**

The Chapter 13 plan proposed by debtors, Roy and Anne Hogue ("Hogue"), pro-

vides for graduated payments to be made to the Chapter 13 Trustee. Pursuant to the plan, the debtors shall make payments of $185 per month for the first 12 months of the plan with $370 per month to be paid for the remaining 46 months of the 58-month plan.[1] At the end of the plan term an additional $1793.43 will be required to be paid to the Chapter 13 Trustee by debtors in order to liquidate the plan. Debtors propose to make this "lump-sum" or "balloon" payment by either selling or refinancing their residence and applying the appropriate portion of the funds received from this transaction to the plan.[2]

The residence owned by debtors has an appraised fair market value of $37,000—$38,000. The residence is encumbered by a first mortgage held by Universal Mortgage Corp., securing payment under a promissory note with a current outstanding balance of approximately $36,000. An arrearage of $387 has accrued on this promissory note. Thus, the debtors possess equity in the property in the amount of $613 or $1613, depending upon which appraisal amount is accepted.

**B. In re Renda**

The debtors, Patrick and Charlotte Renda ("Renda"), have formulated a Chapter 13 plan which calls for a monthly payment of $270 to be made to the Trustee for a period of 36 months. A dividend of 10% to unsecured creditors is contemplated. To achieve this 10% dividend, debtors propose, on the 36th month of the plan, to either sell or refinance their residence in order to raise the $2427.48 necessary to completely liquidate their plan.[3] Debtors' residence has been appraised at $55,000—$56,000.

---

1. As cause to extend the plan beyond 36 months debtors offered the fact that greater than 36 months is required to raise the dividend to unsecured claimants to 70%, thereby preserving the possibility of a subsequent discharge pursuant to § 727(a)(7) of the Bankruptcy Code. *See*, 11 U.S.C. § 1322(c); *In re Festa*, 65 B.R. 85, 86 (Bankr.S.D.Ohio 1986) (per Sellers, J.); *In re Price*, 20 B.R. 253 (Bankr.W.D.Ky.1981).

2. The Hogue Chapter 13 plan states: "If necessary debtors shall, on or before 58 months from

the date of confirmation, sell or refinance the residence real estate and pay the proceeds therefrom into the plan to completely liquidate same."

3. The Chapter 13 plan submitted by Renda provides: "On the 36th month from the date of confirmation debtors shall sell or refinance the residence real estate and pay the proceeds necessary therefrom into the plan to completely liquidate same."

The property bears encumbrances totaling $43,751 ($36,000 first mortgage held by Waterfield Mortgage Company; $7751 second mortgage held by Barclays American). Accordingly, an "equity cushion" of either $11,249 or $12,249 exists with respect to the Renda residence.

## C.  In re Cromwell

Debtor, Leatha Cromwell ("Cromwell"), has proposed a Chapter 13 plan which provides for graduated payments ($350 per month for 12 months; $450 per month for the remainder of the 58 month plan) to be made to the Trustee.  Debtor's plan contemplates full payment of all secured claims and payment of a 70% dividend to holders of allowed general unsecured claims.  At the 58th (and last) month of the plan, the debtor proposes to sell or refinance her residence and thereby obtain the $5748 needed to complete all plan payments.[4]

The residence owned by the debtor has an appraised fair market value of $27,000—$28,000 and is encumbered by a first mortgage of $16,800 (held by the Department of Housing and Urban Development ["HUD"]) and a second mortgage of $12,000 (held by NCNB National Bank).  An arrearage of $182 exists with respect to the promissory note held by HUD.  Debtor possesses no equity in the residence which secures her obligations to HUD and NCNB National Bank.

The Court conducted a hearing on confirmation of each of the debtors' plans as required by 11 U.S.C. § 1324.  Following the confirmation hearings the Court took under advisement the question of whether debtors' Chapter 13 plans, which call for the liquidation (or refinancing) of the debtors' residences at or near the end of the plan term, satisfy the requirements for

confirmation delineated in § 1325(a) of the Bankruptcy Code.

## III.  DISCUSSION

Section 1322(b)(8) of the Bankruptcy Code expressly authorizes Chapter 13 debtors to liquidate assets to make payments under their plan.  This subsection states:

(b) Subject to subsections (a) and (c) of this section, the plan may—

\*     \*     \*     \*     \*     \*

(8) provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor; ....

The Bankruptcy Courts which have been called upon to resolve the issue of whether Chapter 13 plans providing for a partial liquidation of a debtor's assets meet the confirmation standards set forth in 11 U.S.C. § 1325(a) have generally addressed the question in two contexts.  Several courts analyze this issue as one of eligibility for relief under Chapter 13.  Other courts focus on the "feasibility"[5] of such partial liquidation plans.  Each of these matters will be discussed below.

### A.  Eligibility For Relief

■ Section 109(e) of the Code, which governs eligibility for Chapter 13 relief, provides in pertinent part as follows:

"Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of $100,000 and noncontingent, liquidated, secured debts of less than $350,000, ... may be a debtor under Chapter 13 of this title."

11 U.S.C. § 101(24) defines an individual with regular income as an:

"individual whose income is sufficiently stable and regular to enable such an

---

4. The Chapter 13 plan proposed by Cromwell contains the following provision: "On or before 58 months from the date of confirmation debtor shall sell or refinance the residence real estate and pay the proceeds necessary therefrom into the plan to completely liquidate same."

5. Section 1325(a)(6) provides that a court shall confirm a Chapter 13 plan only if "the debtor will be able to make all payments under the plan and to comply with the plan."  This confirmation requirement is commonly referred to as the "feasibility test" or the "feasibility requirement."  *See, In re Gavia*, 24 B.R. 573, 574 (Bankr. 9th Cir.1982).

individual to make payments under Chapter 13 of this title."

Several reported decisions consider the question of whether debtors who are required to liquidate property in order to generate sufficient income to fund a Chapter 13 plan qualify as "individuals with regular income" as defined in § 101(24). *See, e.g., In re Ratmansky,* 7 B.R. 829 (Bankr.E.D.Pa.1980); *Matter of Moore,* 17 B.R. 551 (Bankr.M.D.Fla.1982). One court has gone so far as to hold that because § 1322(b)(8) specifically authorizes a debtor to fund his plan through the liquidation of existing assets, the debtor "need not have a regular source of income." *In re Ratmansky,* 7 B.R. at 832. However, as noted by a respected commentator, the courts which have read § 1322(b)(8) in a manner which eliminates the regular income requirement of § 109(e) have gone too far:

> Certainly, Congress intended to permit debtors to fund, at least in part, Chapter 13 plans by liquidating exempt and non-exempt property. Nevertheless, to the extent that a court may have suggested that a debtor need not have regular income if that debtor intends to fund a Chapter 13 plan solely through the sale of assets pursuant to § 1322(b)(8), that analysis is erroneous. On the other hand, if the suggestion is that the debtor need not have a *regular source* of income, in the sense that the debtor could have several alternate sources of income, then the court's suggestion would not necessarily be erroneous. In that in-

stance the court would be faced with determining whether the alternative sources of income are sufficiently stable and regular so as to meet the § 101(24) definition. With that caveat, the authors must side with the cases which take into account the existence of § 1322(b)(8) in determining whether a particular petitioner is an individual with regular income. Sections 101(24) and 1322(b)(8) should be read together to permit a petitioner whose income is sufficient to satisfy current debts to obtain Chapter 13 relief if that petitioner proposes to fund a Chapter 13 plan out of the sale or disposition of other assets. If, however, the petitioner's income is not sufficient to maintain a level or positive cash flow, then that individual's financial problems are probably more than Chapter 13 can handle.

W.H. Drake, Jr. & J. Morris, *Chapter 13 Practice and Procedure* § 3.12 at 3–28 (1986).

The debtors in the cases *sub judice* have not proposed plans which contemplate funding solely from the sale of assets pursuant to § 1322(b)(8). In each case, the debtors have regular employment and are submitting a portion of their monthly take-home pay to the trustee for distribution to their creditors.[6] Accordingly, it is clear that each of the debtors has a regular source of income within the meaning of § 101(24) and, hence, meets the eligibility requirements of § 109(e) of the Code.

---

**6.** The debtors' respective sources of income and periodic payments to the trustee are outlined below:

| Debtor | Employer/Source of Reg. Income | Mthly Net Income | Mthly Pymt. To Ch. 13 Tr. |
|---|---|---|---|
| R. Hogue | State of Ohio | $ 288 | $185 (combined) for first 12 months; $370 (combined) thereafter |
| A. Hogue | CMACAO | 1,004 | |
| P. Renda | Pension/Soc. Sec. Disability | $ 933 | $270 (combined) |
| C. Renda | Knight's Inn | 303 | |
| L. Cromwell | Franklin County Dept. of Human Services | $ 1,323 | $350 for first 12 months; $450 thereafter |

## B. Feasibility

■ Having concluded that debtors' partial-liquidation plans, as proposed, do not render them ineligible for Chapter 13 relief, the Court next will consider the issue of whether debtors' plans meet the so-called feasibility requirement of 11 U.S.C. § 1325(a)(6). As Collier, another respected commentator, has noted, "the most important criterion for the confirmation of a chapter 13 plan ... is the requirement that the court determine whether the chapter 13 debtor will be able to make all payments under the plan and comply with all other provisions of the plan." *Collier on Bankruptcy,* ¶ 1325.07 at 1325–40 (15th ed. 1986). Clearly, a Bankruptcy Court must refuse to confirm a Chapter 13 plan if it finds that the debtor will be unable to make all payments under the plan and otherwise comply with the proposed plan. 11 U.S.C. § 1325(a)(6).

■ As the proponents of their respective plans, debtors bear the burden of proving that the requisite tests for confirmation outlined in § 1325(a) of the Code have been met. *In re Crago,* 4 B.R. 483 (Bankr.S.D. Ohio 1980); *In re Goodavage,* 41 B.R. 742 (Bankr.E.D.Va.1984); *In re Smith,* 39 B.R. 57 (S.D.Fla.1984); *Matter of Ponteri,* 31 B.R. 859 (Bankr.D.N.J.1983); *In re Sellers,* 33 B.R. 854 (Bankr.D.Colo.1983); *In re Wolff,* 22 B.R. 510 (Bankr. 9th Cir.1982); *In re Elkind,* 11 B.R. 473 (Bankr.D.Colo. 1981).[7] Thus, in the instant cases, debtors must prove that their partial liquidation

plans meet the feasibility requirement of § 1325(a)(6). *In re Olp,* 29 B.R. 932, 936 (Bankr.E.D.Wis.1983) (burden of proving that all payments can be made and full compliance with plan can be achieved rests upon the debtor).

■ In the cases before the Court, it is readily apparent that debtors have failed to satisfy their burden of proving that their proposed plans are feasible. Debtors introduced no evidence to establish that the sales and/or refinancings contemplated by their plans were reasonably likely to occur at the times specified in the plans. In fact, none of the debtors chose to attend the confirmation hearings to provide testimony or other evidence in support of their plans. Hence, the debtors' bare assertions that they will sell or refinance [8] their residences at or near the end of their Chapter 13 plans, standing alone, plainly does not satisfy the feasibility requirement of § 1325(a)(6).

■ The Court notes that, even had the debtors chosen to appear and testify, it is difficult to envision any scenario in which such testimony could overcome the Court's serious doubts concerning the feasibility of a Chapter 13 plan whose success depends entirely upon the occurrence of a contingency scheduled to occur some three to five years from the plan's inception. Bankruptcy Courts have consistently denied con-

---

7. Among the courts that have considered the issue, there is general agreement that, given the ordinary posture of the debtor as the proponent of the plan and the requirement of § 1325(a) that all confirmation criteria be met, the burden of proof should properly be assigned to the debtor at the hearing on confirmation of a Chapter 13 plan. However, where a creditor objects to confirmation, there is a split of authority as to the proper allocation of the burden of proof. *Compare, In re Wolff,* 22 B.R. 510, 512 (Bankr. 9th Cir.1982) (where creditor objects to confirmation, debtor, as proponent of the Chapter 13 plan, has the burden of proof as to its confirmation) with *In re Mendenhall,* 54 B.R. 44, 45–46 (Bankr.W.D.Ark.1985) (creditor, objecting to confirmation, as moving party, has the burden of proving that the plan should not be confirmed).

8. One Bankruptcy Court has held that, while § 1322(b)(8) permits a debtor to sell assets in order to fund a Chapter 13 plan, it does not allow for a refinancing. *In re Whitten,* 11 B.R. 333, 338 (Bankr.D.D.C.1981) ("[w]hile it is undisputed that § 1322(b)(8) permits a debtor to liquidate his indebtedness by a sale of property, either from exempt or non-exempt sources ... a refinancing is not a 'sale of property' "). This Court believes that the *Whitten* court reads § 1322(b)(8) much too narrowly. The Court can perceive no practical difference between a debtor who sells exempt property to fund a plan and a debtor who pledges the exempt property as collateral to obtain a loan to gain funds to make payments under a Chapter 13 plan. *See, In re Washington,* 6 B.R. 226, 230 (Bankr.E.D. Va.1980) ("plan contemplates that payment will be made through the refinancing of the debtors' residence, or through the sale of the residence").

firmation of Chapter 13 plans containing such speculative contingencies. *See, e.g., In re Vieland,* 41 B.R. 134, 140 (Bankr.N. D.Ohio 1984) (court "will not allow debtors to use 11 U.S.C. section 1322(b)(8) where the contemplated sale of property is merely speculative; debtors must show the likelihood of a sale"); *In re Tucker,* 34 B.R. 257, 263 (Bankr.W.D.Okla.1983) ("debtors must do more than simply state that assets will be sold sometime in the future, they must bear the burden of showing a likelihood of consummating their proposed sale"). *Cf. In re Reines,* 30 B.R. 555 (Bankr.D.N.J. 1983) (plan predicated in part upon highly speculative award from a lawsuit which the trustee chose not to pursue is not feasible); *Circle Management Services, Inc. v. Wright (Matter of Wright),* 36 B.R. 663 (Bankr.S.D.Ohio 1984) (plan is not feasible where the debtor proposes to compromise a large state criminal restitution order and the threat of revocation of probation by the state criminal court is not resolved).

In *In re Gavia,* 24 B.R. 216 (Bankr.E.D. Cal.1982), *aff'd.,* 24 B.R. 573 (Bankr. 9th Cir.1982), the Bankruptcy Court considered the issue of whether a Chapter 13 plan, which provided that the debtor's dwelling was to be sold within six months after confirmation, met the feasibility test. In concluding that the debtor's plan failed to satisfy the feasibility requirement of § 1325(a)(6), the *Gavia* court stated as follows:

> While it may be contended that the offer by debtors to sell their dwelling within a stated period of time might be considered their best effort and in good faith [since there appears nothing else that he can do], this proffer should be considered in the light of reality. The Bankruptcy Code gives a debtor an absolute right to dismiss or convert his Chapter 13 to a Chapter 7 case. What assurance do creditors get in exchange for the apparent detriment to them of receiving no payments incurring additional liability by the necessity of paying taxes and insurance for the hope that the property will be sold and payments made? At least in this instance there is none. There is nothing to prevent a debtor whose home is sold during the period of time the creditors are restrained from waiting until the escrow is about to close to convert his Chapter 13 to a Chapter 7 proceeding, claiming his homestead exemption, and thus wiping out any equity as well as his creditors other than those directly secured by the realty.
>
> *Additionally, there is no certainty that any piece of real property can be sold in the foreseeable future with any degree of certainty in a specified period of time for a sum great enough to cover notes and deeds of trust upon the property, taxes, insurance and costs.*

24 B.R. at 218 (emphasis added).

■ This Court is in complete agreement with the *Gavia* court's well-reasoned decision. Moreover, the concerns raised by the court in *Gavia* are magnified in the cases *sub judice,* given the fact that the liquidation of the debtors' residences is not scheduled to occur until three to five years after confirmation, as opposed to the relatively short six month period in *Gavia.* Where the consummation of a Chapter 13 plan hinges entirely upon the happening of a speculative, contingent event, scheduled to occur some three to five years [9] from the

---

9. Based upon its review of the case law, the Court notes that the plans proposed by the debtors here are very unusual given the long delay (three to five years) between the date of confirmation and the proposed sale/refinancing of the debtors' residences. The longest delay in the proposed liquidation of a debtor's property contemplated in any of the reported decisions revealed by the Courts' research was six months; and, even this relatively short delay was disapproved due to feasibility concerns. *See, In re Gavia,* 24 B.R. 573 (Bankr. 9th Cir.1982). In-deed, in virtually all of the reported decisions, the plans under consideration called for immediate marketing and sale (or refinancing) of the asset(s) to be liquidated. *See, e.g., In re Anderson,* 28 B.R. 628 (S.D.Ohio 1982) (affirming confirmation of Chapter 13 plan proposing immediate sale of debtor's farm despite "far from ideal" market conditions where the Bankruptcy Court required monitoring of the continued feasibility of the plan through periodic progress reports to the Chapter 13 trustee).

date of confirmation, such a plan simply cannot meet the feasibility requirement of § 1325(a)(6).[10]

The Court can foresee a whole host of possible events which could conceivably preclude the occurrence of debtors' planned sale/refinancing. Changed market conditions, interest rates, or lending practices may make a sale or refinancing of debtors' residences impossible within the next three to five years. Debtors' personal situations may foreclose the option of obtaining alternative housing some three to five years hence. Further, a non-consensual tax or judgment lien could attach to the debtors' properties thereby eliminating the equity necessary to obtain the funds to liquidate the debtors' plans. Finally, as the *Gavia* court noted, the debtors could convert their cases to Chapter 7 proceedings, claim their homestead exemption and, thereby, eliminate the equity necessary to liquidate their plans.

In short, given the myriad of contingencies which could operate to preclude the proposed sale/refinancing of the debtors' residences, particularly where the sale/refinancing is postponed for three to five years,[11] the Court simply cannot conclude that debtors' plans satisfy the feasibility requirement of § 1325(a)(6). Accordingly, the Court hereby DENIES confirmation of the debtors' Chapter 13 plans. Debtors shall have twenty (20) days from the date of entry of this order to take whatever action they deem appropriate in order to place their plans in a posture for confirmation. If no such action is taken within twenty (20) days, the Court shall dismiss these cases.[12]

Administrative expenses incurred by the Chapter 13 trustee in the sum of $27.50 shall be paid by the debtors to the Chapter 13 Trustee within twenty (20) days from the date of this order. No proposed revision to the plan or pleading in response to this order will be heard by the Court unless

**10.** The Court, by its decision in the present cases, does not intend to imply that all partial liquidation Chapter 13 plans are unfeasible. Instead, the Court simply holds that plans of the type before the Court in the cases at bar (*i.e.*, plans whose success depends upon the occurrence of a speculative, contingent event in the distant future) cannot meet § 1325(a)(6)'s feasibility requirement. The Court can conceive of instances where a partial liquidation Chapter 13 plan would be found to meet the feasibility confirmation criterion of § 1325(a)(6). Such a case would necessarily involve the presentation of competent evidence establishing that the proposed liquidation was not unduly speculative— *i.e.*, that the terms of the liquidation (such as price to be received by the seller) are fairly certain—and that the liquidation is scheduled to occur either immediately, or within a reasonably short time period.

**11.** It is somewhat puzzling that debtors in the *Renda* case have proposed a plan which does not contemplate sale or refinancing of their residence until the 36th month of the plan. As noted above, an equity cushion of either $11,249 or $12,249 exists with respect to the Renda property. Thus, it appears that the debtors could sell or refinance their residence immediately and obtain the $2,427.48 necessary to liquidate their plan. Given these facts, it appears that the lump sum, or balloon payment provision in the Renda plan constitutes little more than a delaying tactic.

**12.** The Court notes, as an aside, that the noticing system employed by the Bankruptcy Clerk may well fail to properly apprise all parties-in-interest of the highly speculative nature of partial liquidation Chapter 13 plans of the type proposed in the present cases. The Court's review of the official court files in these cases reveals that, in two of the three cases (*Hogue* and *Cromwell*), no notice was provided regarding the proposed sale or refinancing of the debtors' residences. The contemplated sale/refinancing in the *Renda* case is referred to in the combined notice and order (which fixes the date of the first meeting of creditors, the date of the confirmation hearing, the last date for filing proofs of claim, etc.) generated by the Bankruptcy Clerk's computerized noticing system; however, no reference to the fact that the unsecured creditors will fail to receive the proposed dividend if the sale/refinancing does not occur is made in the combined notices/orders that were mailed to all parties-in-interest in the *Hogue, Renda* and *Cromwell* cases. Hence, the Court believes that such notices fail to fully apprise creditors of the speculative nature of partial liquidation Chapter 13 plans. Clearly, such notices should specify that, if the sale/refinancing envisioned by the debtors' plans is not consummated, the dividend proposed to be paid to unsecured creditors may well be significantly reduced or, in some instances, eliminated altogether.

there is proof that the provisions of this
paragraph have been satisfied.

IT IS SO ORDERED.