**In re Charles T. SEEM d/b/a Solar Shield, Debtor.**

**Bankruptcy No. 87–00261T.**

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 1, 1988.

---

Karl E. Friend, Allentown, Pa., for debtor.

Frank L. Majczan, Allentown, Pa., for Northeastern Bank of Pennsylvania.

### MEMORANDUM OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Northeastern Bank of Pennsylvania ("Northeastern") presses its objection to the confirmation of debtor Charles T. Seem's ("debtor") chapter 13 plan. We sustain Northeastern's objections.[1]

Northeastern holds a senior blanket mortgage covering two parcels of real property owned by debtor. The parties have stipulated that debtor owes $13,432.32 in pre-petition arrearages, as well as $19,321.20 on post-petition arrearages.

Debtor's amended plan provides in relevant part:

2. All creditors are to be paid 100% of their allowed claims. Debtor will pay $1,000 per month plus whatever additional amounts are available from future earnings. To the extent that Debtor's payments do not equal allowed claims at the end of the Plan period, Debtor's real estate will be liquidated to satisfy the remaining amount.

\* \* \* \* \* \*

6. To the extent that the Trustee has received less monies than indicated herein from the institution of the Plan, the Debtor shall cure such deficiency in equal payments for the last six payments of the Plan.

---

**1.** We follow our colleague, Judge Fox, and present this opinion in the form of the findings of fact and conclusions of law arguably required by N.B.R. 7052 and Fed.R.Civ.P. 52. *In re Navarro,* 83 B.R. 348, 350 n. 1 (Bankr.E.D.Pa. 1988).

Amended Plan, ¶ 2, 6. The Plan further provides that the trustee shall pay to Northeastern "an amount not exceeding $61.83 per month" on the arrears on the first (residential) mortgage and "an amount not exceeding $98.00 per month" on the blanket mortgage. Debtor presents these proposals in the form of a five (5) year plan.

After reviewing the pleadings and stipulation of fact, and exercising our own independent duty pursuant to 11 U.S.C. § 1322(b)(10) and 11 U.S.C. § 1325(a)(1) to determine whether the plan is confirmable, *In re Ratmansky*, 7 B.R. 829, 833, 6 B.C.D. 1362, Bankr.L.Rep. ¶ 67, 882 (Bankr.E.D. Pa.1980); *See also, In re Gurst*, 76 B.R. 985, 989 (Bankr.E.D.Pa.1987), we conclude that this plan is fraught with problems preventing confirmation. Northeastern has met its initial burden of production, but debtor has not carried his ultimate burden of persuasion. *In re Navarro*, 83 B.R. 348, 355, 17 B.C.D. 361, Bankr.L.Rep. ¶ 72,233 (Bankr.E.D.Pa.1988).

Debtor must pay the $13,432.32 pre-petition arrearages within a "reasonable time," 11 U.S.C. § 1322(b)(5), which means within the maximum five (5) year plan period allowed by 11 U.S.C. § 1322(c). *In re Ziegler*, 88 B.R. 67 (Bankr.E.D.Pa.1988); *Fedl. Land Bank of Baltimore v. Snyder (In re Snyder)*, 42 B.R. 277, 278 (Bankr.E.D.Pa. 1984); *In re Keays*, 36 B.R. 1018, 1019 (Bankr.E.D.Pa.1984). A few simple calculations indicate that the proposed plan payments even spread over a sixty month period, will not equal the $13,432.32 pre-petition arrearages. Thus, it will be impossible to do this unless (1) debtor experiences a fortuitous increase in income *and* chooses to contribute it to the trustee, or (2) debtor exercises his proposal to sell the real estate "at the end of the Plan period." Amended Plan, ¶ 2.

Debtor has presented us with no evidence that his earning capacity or fortunes are such that we could expect him to have available "additional amounts" from "fu-

ture earnings." With proposed Plan payments of $1,000.00 per month, and a $530.00 first mortgage to be made outside of the Plan, debtor is already committing more funds than the average chapter 13 debtor. We cannot, however, speculate about his future earnings.

This leaves liquidation of the real estate as debtor's only option, but that alternative cannot save this Plan. In a prior case, we rejected as too speculative a debtor's offer to cure pre-petition arrearages with a pledge of proceeds from a contingent, unliquidated state court lawsuit. *In re Ziegler*, 88 B.R. 67 (Bankr.E.D.Pa.1988). Other courts have confronted more analogous situations. Examining several consolidated cases, one court held that partial liquidation plans which contemplated the sale or refinancing of debtors' residences at or near the end of the plan did not meet the confirmation criteria of 11 U.S.C. § 1325(a)(6), commonly known as the "feasibility" test. *In re Hogue*, 78 B.R. 867, 874 (Bankr.S.D.Oh.1987). As Judge Cole noted:

> The court can foresee a whole host of possible events which could conceivably preclude the occurrence of debtors' planned sale/refinancing. Changed market conditions, interest rates, or lending practices may make a sale or refinancing of debtors' residences impossible within the next three to five years. Debtors' personal situations may foreclose the option of obtaining alternative housing some three to five years hence. Further, a non-consensual tax lien could attach to the debtor's properties thereby eliminating the equity necessary to obtain the funds to liquidate the debtors' plans. Finally, as the *Gavia* court noted, debtors could convert their cases to chapter 7 proceedings, claim their homestead exemption and, thereby, eliminate the equity necessary to liquidate their plans.

*Id.*[2]

Taking a slightly different tack, another court has suggested that a plan which pro-

**2.** The reference in this quote is to *In re Gavia*, 24 B.R. 216 (Bankr.E.D.Cal.1982) *affd.* 24 B.R. 573 (9th Cir. BAP 1982), another case on point.

poses to pay a noteholder through a sale of property is not an appropriate vehicle in a chapter 13. *Nantz v. Centerie Bank of the Pacific (In re Nantz)*, 75 B.R. 617 (Bankr.E.D.Mo.1987). Such a plan, according to *Nantz*, is not indicative of the regular and stable income required of a chapter 13 debtor. *Id.* at 618. Although we have already rejected this argument because § 1322(b)(8) allows payments from sale proceeds, *In re Ratmansky*, 7 B.R. 829, it is important to remember that some courts consider this an independent basis for sustaining confirmation objections in this type of case. *See generally, In re Hogue*, 78 B.R. 867, 871 (emphasizing a middle ground approach).

One feature of debtor's Plan mandates that we take a more stringent position in the instant case than we did in our *Ziegler* opinion, or than Judge Cole took in *Hogue*. Unlike the *Hogue* debtors, who proposed sales at various late points in their plan periods, the instant debtor proposes that property be sold "at the end of the Plan period." Debtor fails to carry his burden of persuasion that the payments flowing from this type of *late* sale would fall *within* the maximum plan period. 11 U.S.C. § 1322(c). Although chapter 13 inherently effects a change in the relationships between debtors and creditors, as well as in the ordinary course of commerce, we will not force a chapter 13 creditor into the precarious scenarios outlined by Judge Cole without more certainty that pre-petition arrearages will be paid—within five (5) years. We will, however, word our order in a manner which allows the debtor opportunity to amend his Plan in response to these objections.

An appropriate order follows.

### ORDER

AND NOW, this 1st day of November, 1988, the objections filed by Northeastern Bank of Pennsylvania to debtor Charles T. Seem's Amended Plan are hereby SUSTAINED WITHOUT PREJUDICE.