**In re Stephanie Boyd HUFFMAN,
Debtor.**

No. 11–13447.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Sept. 28, 2012.

James K. Ferris, Cincinnati, OH, for Debtor.

## ORDER APPROVING APPLICATION FOR DEBTOR'S ATTORNEY'S FEES

JEFFREY P. HOPKINS, Bankruptcy Judge.

Before the Court is an Application for Allowance of Fees (the "Application") for services related to the Debtor's Chapter 13 case filed by James K. Ferris. See Doc. 93. The issue before the Court is whether a total fee of $11,822 calculated on the basis of 61.6 billable hours is reasonable for counsel's services considering the Debtor's inability to obtain confirmation of her Chapter 13 plan. For the reasons that follow, the Court approves the Application for attorney's fees, but in the reduced amount of $6,206.67.

### BACKGROUND

From the start, this case has had a troubled history in this Court. The case was initially filed under Chapter 7 on June 2, 2011 (Doc. 1), but was converted to Chapter 13 the following day (Doc. 8). Counsel for the Debtor has since explained that the Chapter 7 petition was filed inadvertently and that the case originally was meant to be filed under Chapter 13. The case has been pending for more than a year without any meaningful progress towards confirmation. Multiple plans, more or less similar in substance, content and design, have been filed in the case. None of the plans have met the rather rigorous standards that apply under §§ 1322 and 1325 for confirmation of a Chapter 13 case involving the sale of real estate as the primary mechanism for funding a plan. Ultimately, the case will be dismissed.

The Debtor filed the original Chapter 13 plan of reorganization on July 14, 2011. The plan provided for the payment of all allowed secured claims and priority claims, and a 100% distribution to unsecured creditors. The plan further stated that funding would come primarily from the liquidation of real property. See Doc. 18. Plymouth Park Tax Services, LLC ("Plymouth") and Fifth Third Mortgage Company, creditors in the case, filed objections to the plan contending that the plan failed to meet the standards under § 1322(b)(5). See Docs. 27 and 32. The plan did not provide adequate protection payments to secured creditors, did not offer a viable strategy for selling the properties in order to fund the plan, and failed to provide payment for certain creditor's claims.

Subsequently, on October 7, 2011, the Debtor filed an amended plan. The amended plan stated that if Plymouth's claim was not paid in full before May 1, 2012, the Debtor would commence making $1,200 in conduit payments to the Chapter 13 trustee, or in the alternative, the Debtor would retain an auctioneer to conduct sales of certain properties. See Doc. 38. A hearing on the Amended Plan was held

on February 14, 2012, and by February 23, 2012, a second amended plan ("Second Amended Plan") was filed along with counsel's first application for compensation in the amount of $6,549. See Docs. 49 and 50.

Much like the first two plans, the Second Amended Plan relied primarily upon the liquidation of real property for funding the plan. Unlike the other plans, however, the Debtor set out a detailed time frame for the sale of three of the estate properties. One property was to be sold by August 2012 while the other two properties were to be sold within 18 months from the filing of the Second Amended Plan. See Doc. 49. The Second Amended Plan did not provide a default remedy for creditors in the event the Debtor failed in her efforts to consummate a sale. See Doc. 49. On March 6, 2012, the Court denied confirmation of the Second Amended Plan and directed the Debtor to either convert the case to one under Chapter 7 or 11 or file a third amended plan. See Doc. 51.

On March 20, 2012, Plymouth filed motions for relief from the automatic stay on three properties upon which it held liens. See Docs. 54, 56, and 58. Prior to the hearing on Plymouth's motions for relief from stay, the Debtor filed her Third Amended Plan. In the plan, she proposed to modify the sale dates and added default provisions. See Doc. 65. At the April 16, 2012, hearing, the Court expressed continued concern about the feasibility of the Debtor's Third Amended Plan. Concerned with the Debtor's inability to sell certain of the properties or to satisfy Plymouth's claim, the Court issued an order conditioning the stay. See Doc. 75. Under the order conditioning the stay, the Debtor had until June 1, 2012, to sell the property located at 4038 Burwood Avenue, Norwood, OH 45212 or the stay would be lifted. The Court also granted the Debtor's motion to sell real property (Doc. 85),

to retain a real estate broker (Doc. 82), and to retain an auctioneer (Doc. 86), strategies that perhaps should have been incorporated in the original plan as filed.

A confirmation hearing on the Debtor's Third Amended Plan was held on June 12, 2012. During the hearing, counsel for the Debtor informed the Court that the Debtor's planned sale of the Burwood Property was unsuccessful. The Court again denied confirmation and continued the confirmation hearing to July 17, 2012. The Court also indicated that the Debtor would have one last opportunity to propose a feasible Chapter 13 Plan before the case would be converted or dismissed. On July 9, 2012, counsel for the Debtor filed a second application for fees, this time in the amount of $11,822. Thereafter, on July 11, 2012, instead of amending the plan, the Debtor moved to dismiss her case pursuant § 1307. See Doc. 94.

### DISCUSSION

The Bankruptcy Code provides that after notice and hearing, a court may award "reasonable compensation for actual, necessary services" rendered by professionals. 11 U.S.C. § 330(a)(1)(A) and (B). Where a fee agreement "exceeds the reasonable value of any such services," § 329 provides that the court may cancel the agreement to the extent excessive of the reasonable value. *In re Radford*, No. 10–21983, 2011 WL 5827316, at *2, 2011 Bankr.LEXIS 4389, at *4–5 (Bankr. N.D.Ohio Nov. 18, 2011). In determining the reasonable value of services, a court must consider "the nature, the extent, and the value of such services," taking into account all relevant factors, including whether the services were necessary to the administration of the case, or beneficial at the time the service was rendered toward completion of the case. 11 U.S.C. § 330(a)(3)(C). Further, it is well settled

that the reasonableness determination is made by the use of the Lodestar method, which calls for the multiplication of the attorney's reasonable hourly rate by the number of hours reasonably expended. *In re Boddy,* 950 F.2d 334, 337 (6th Cir.1991).

■■ Generally, "there is a strong presumption that the Lodestar amount represents 'reasonable compensation.' " *In re Big Rivers Elec. Corp.,* 252 B.R. 676, 686 (W.D.Ky.2000) (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 564–65, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)). However, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry." *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Additional factors can be considered and the court can adjust an award upward or downward to achieve a reasonable result. *In re Boddy,* 950 F.2d at 338. The additional factors to be considered are:

> (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Geier v. Sundquist,* 372 F.3d 784, 792 (6th Cir.2004) (quoting *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974)). Ultimately, the party seeking attorney's fees bears the burden of proving the reasonableness of the hours and the rates. *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933.

■■ The Court finds that, given counsel's experience, reputation, and ability in bankruptcy matters, $195.00 per hour is a reasonable rate. Thus, under the applicable case law, the Court's inquiry next turns to whether expending 61.6 hours in this case was reasonable considering other relevant Lodestar factors. In this regard, " 'the majority of [c]ourts agree that the results obtained is a *major factor* in determining whether the services at issue bestowed a benefit upon the estate.' " *In re McLean Wine Co.,* 463 B.R. 838, 848 (Bankr.E.D.Mich.2011) (emphasis added) (quoting *In re Allied Computer Repair, Inc.,* 202 B.R. 877, 886 (Bankr.W.D.Ky. 1996)). The Court is quite conscious that it " . . . should resist the temptation to engage in 20/20 hindsight and [that it should] focus instead on facts known (or which should have been known) to the applicant at critical points during the pendency of the case." *Id.* (quoting *In re Arnold,* 162 B.R. 775, 778 (Bankr. E.D.Mich.1993) (internal quotation marks omitted)). Accordingly, the most pertinent issue is whether "when viewed under the circumstances in existence at the time, [counsel's] services were reasonably calculated to provide a benefit to the estate." *Id.* (quoting *In re Kennedy Mfg.,* 331 B.R. 744, 748 (Bankr.N.D.Ohio 2005) (internal quotation marks omitted)).

Counsel's most recent Application states that he has received $651.00 and the attached time itemization indicates that a balance of $11,171.00 remains. See Doc. 93. Of the 61.6 hours billed, 2 hours were billed for paralegal assistance at a rate of $100.00 per hour, and 59.6 hours were billed for counsel's services at a rate of $195.00 per hour. Almost 40 percent of the hours billed at counsel's rate, or 23.1 hours, were incurred after the Court de-

nied confirmation of Debtor's Second Amended Plan and after the Court expressed serious concern about the feasibility of Debtor's plan in the Chapter 13 context. On September 10, 2012, the Chapter 13 Trustee ("Trustee") filed a response to the Application. See Doc. 97. The Trustee noted that Debtor has only paid $9,310.00 into her office since the petition was filed. See Doc. 97.

 It is settled law that a debtor bears the burden of proof as to the plan's feasibility when seeking confirmation of her plan. 11 U.S.C. § 1325(a)(6); see In re Hogue, 78 B.R. 867, 872 (Bankr. S.D.Ohio 1987). Courts have consistently denied confirmation of plans containing speculative contingencies. In re Hogue, 78 B.R. at 872–873. While it is true that pursuant to § 1322(b)(8), a plan may "provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor," the feasibility of a Chapter 13 plan funded from the sale of real property is conditioned on the reasonableness of the proposed time frame and whether a default remedy is provided for creditors in the event a sale does not occur. See e.g., In re Lynch, 2009 WL 1955748, at *4, 2009 Bankr.LEXIS 1863, at *10 (Bankr. E.D.N.Y. July 6, 2009); In re Jensen, 369 B.R. 210, 236–237 (Bankr.E.D.Pa.2007); In re Valdez, 2007 WL 1464439, at *4, 2007 Bankr.LEXIS 1789, at *11 (Bankr.D.N.M. May 17, 2007); In re Hogue, 78 B.R. 867, 874 n. 10 (Bankr.S.D.Ohio 1987).

According to his time records, during the month immediately preceding the commencement of the case counsel expended approximately 5 hours consulting with the Debtor and preparing the Debtor's case for filing. See Doc. 93, Time Itemization. While preparing her schedules and her case under the means test, counsel must have become aware that the Debtor had limited regular income and that her best chance of funding a bankruptcy plan was through the uncertain mechanism of liquidating real property. Indeed, every new iteration of the plan that the Debtor filed proposed funding the reorganization effort through real property sales. See Docs. 18, 38, 49, and 65. Yet, counsel submitted a plan, on July 14, 2011, over a month after the petition was filed in this case, that was speculative, at best. Moreover, each of the amended plans filed by the Debtor, thereafter, contained many of the same defects. As proposed, the plans did not specify a reasonable time frame within which sales of the properties were to be consummated, nor did the plans provide default provisions to protect the secured creditors in the event the proposed property sales failed to materialize. See In re Hogue, 78 B.R. at 874 n. 10.

In sum, the Court concludes that counsel failed to properly take into account or address the Debtor's significant burden of demonstrating the feasibility of a plan calling for funding substantially through property sales at numerous and critical points during the yearlong proceedings. A modicum of investigation into existing law, should have suggested to Debtor's counsel that all the services he was providing were unlikely to produce a confirmable Chapter 13 plan and that the Debtor's circumstances called for an alternate strategy. At the time the petition was filed, Debtor's counsel should have contemplated whether a Chapter 13 filing offered a more viable alternative over Chapter 7 or whether filing bankruptcy was the most advisable course for the Debtor to take to solve her financial ills in the first place. See In re Polishuk, 258 B.R. 238, 248–49 (Bankr. N.D.Okla.2001) ("In order to benefit the estate, the services rendered must relate to a realistically obtainable goal. Counsel for a debtor or debtor in possession will

not be compensated for time spent in preparation of a plan which has no realistic hope of confirmation."); *In re Saturley,* 131 B.R. 509, 521 (Bankr.D.Me.1991) ("[F]utile efforts aimed at achieving unattainable objectives are unreasonable. Fees generated in tilting at windmills will be disallowed.") (other citations omitted); *see also In re MFlex Corp.,* 172 B.R. 854, 857 (Bankr.W.D.Tex.1994) ("Chapter 11 cases which lack viable chances of reorganization may place the fees of counsel at risk.... [A]t some point counsel for the Debtor should have recognized that reorganization was not feasible and that services of counsel in that direction would be of no benefit to the estate.") (internal quotation marks and citations omitted).

Instead of providing a benefit to the estate, the legal services rendered in this case burdened it with unnecessary fees, costs, and delays. Given the lack of results achieved in this case, and after over a year of proceedings, during which the Debtor proposed three plans, none of which were feasible or confirmable, the Court determines that the Application does not meet the difficult burden of showing that 61.6 hours was reasonable. *See In re McLean Wine Co.,* 463 B.R. 838, 848 (Bankr.E.D.Mich.2011) (" '[W]hen a professional's efforts have failed to produce a significant benefit, the task of proving the reasonableness of the fees to the Court becomes unsurprisingly more difficult.' ") (quoting *In re Unitcast, Inc.,* 214 B.R. 992, 1009 (Bankr.N.D.Ohio 1997)).

The Court notes that only $9,310.00 has been paid to the Chapter 13 Trustee towards a plan that calls for payment of all allowed secured and priority claims and a 100% distribution to unsecured creditors. The Court further realizes that counsel is not a guarantor that a debtor will make all payments to the trustee, or that a debtor will fulfill all the requirements for confirming a plan or obtaining a discharge. However, "[t]o justify more than a nominal fee, counsel must provide evidence of valuable professional efforts to investigate and to evaluate the facts, valuable professional efforts to assess the prospects for confirming a chapter 13 plan, valuable professional efforts to confirm a chapter 13 plan, valuable professional client counseling concerning the debtor's postpetition duties and responsibilities, and a reasonable belief that a plan could be confirmed and consummated." *In re Phillips,* 291 B.R. 72, 83 (Bankr. S.D.Tex.2003).

Here, the plan will not be confirmed and the case will be dismissed. This Court adopts and agrees with the Court in *In re Burton,* 278 B.R. 645 (Bankr.M.D.Ga.2001), which succinctly stated: "This Debtor might have been more ably and economically assisted by legal counsel that would have discouraged the filing of a chapter 13 case ..." *In re Williams,* 378 B.R. 811, 825 (Bankr. E.D.Mich.2007) (quoting *In re Burton,* 278 B.R. 645, 651 ("In substantially reducing the fees, the court [in *In re Burton* ] expressed its concerns that counsel had not considered filing a chapter 7 petition and questioned whether any petition should have been filed")). While the Court is cognizant of the fact that counsel devoted a substantial amount of work in representing his client, those efforts must be measured against the benefit to the bankruptcy estate and the services rendered related to a realistically obtainable goal. *See In re McLean,* 463 B.R. at 848. It would run contrary to the law to disburse fees in this case for anything more than a nominal amount, especially when there was no discernible benefit to the estate. Most of the services performed in this case were in preparation of a plan which had no realistic hope of confirmation. "Finally, the fact

that a debtor derives personal benefit from the delay of collection efforts against him or her due to the bankruptcy case does not constitute a benefit for purposes of awarding compensation." *In re Polishuk,* 258 B.R. at 248; *see Bachman v. Pelofsky (In re Peterson),* 251 B.R. 359, 365 (8th Cir. BAP 2000) (affirming refusal to award fee where "efforts resulted in no benefit to the debtor under § 330(a)(4)(B), other than to cause delay in payment."). The Court concludes that the amount of the fees awarded should be substantially reduced from the total requested.

Based on the foregoing, the Application is hereby **DENIED** in part and **GRANTED** in part. Attorneys fees in the amount of $6,206.67 is hereby awarded on the Application. The Trustee is ordered to remit $6,206.67 less the $651 already paid by the Debtor, for a total of $5,552.67 directly to Mr. Ferris.

**IT IS SO ORDERED.**