## In re COLUMBIA PLASTICS, INC., Debtor.

### No. 96–37646.

United States Bankruptcy Court, W.D. Washington.

July 12, 2000.

Tim Dack, Vancouver WA, for Gunn Plastics, Inc.

David Hercher, Portland, OR, for Landerholm Law Firm.

Shawn Ryan, Portland, OR, for Trustee's Counsel.

## AMENDED MEMORANDUM DECISION

PAUL B. SNYDER, Bankruptcy Judge.

This matter is before the Court on the application of the Chapter 7 Trustee [Trustee] for approval of the Trustee's Final Report (Pre–Distribution) and Application for Fees [Final Report], and by the attorney for the Trustee [Trustee's Counsel], for approval of the Landerholm Law Firm's Third and Final Application for Compensation and Reimbursement of Costs/Expenses as Trustee's General Counsel [Final Application]. Gunn Plastics, Inc. [Gunn], an unsecured creditor in this case, filed an Objection to Trustee's Final Report. Gunn objects to the approval of the Final Application by Trustee's Counsel and further requests that this Court order Trustee's Counsel to disgorge all fees that have been previously paid to him on an interim basis. Although Gunn did not object to the compensation requested by the Chapter 7 Trustee in his Final Report, the Court, sua sponte, requested that the Trustee provide a detailed statement of the time he expended in this case. On March 9 and April 5, 2000, the Court held evidentiary hearings on the applications for compensation of both the Trustee and Trustee's Counsel. On May 23, 2000, the Court issued a Memorandum Decision and an Order on Compensation of Chapter 7 Trustee and Trustee's Counsel. A timely motion was made by Landerholm, Memovich, Lansverk & Whitesides, P.S. [Landerholm firm] to amend the Memorandum Decision that

was set for hearing on July 12, 2000. The Landerholm firm subsequently filed an ex parte motion to withdraw the motion to amend on July 7, 2000. On July 12, 2000, based on a review of the March 9, 2000 and April 5, 2000 transcripts, testimony of the witnesses, evidence, pleadings and exhibits submitted, the Court amends its Memorandum Decision dated May 23, 2000. The Court's amended findings of fact and conclusions of law are as follows:

## BACKGROUND

On November 18, 1996, Columbia Plastics, Inc. [Debtor] filed a voluntary petition for relief under Chapter 7 of Title 11. Immediately thereafter, the Trustee and Trustee's Counsel were appointed. The liquidation of the Debtor's business was relatively straight forward. The Trustee collected total receipts of approximately $1,280,234.75, substantially all of which came from the sale of the Debtor's equipment, fixtures, and machinery in January, 1997. The remaining receipts came from collection of the Debtor's accounts receivable, interest income, and minimal preference recoveries.

The Trustee received one interim trustee fee disbursement of $25,000[1], and he now requests an additional trustee fee of $35,337.09, which is the maximum fee allowed under 11 U.S.C. § 326(a). Trustee's Counsel received two interim attorney fee and cost disbursements from the estate, which total $62,616.89. Trustee's Counsel initially requested additional attorney fees of $12,777.50. On February 25, 2000, Trustee's Counsel filed a response to Gunn's objection to fees increasing his attorney fee request to $15,716.50, in part due to having to respond to Gunn's objections to his fees.

Two separate compensation issues are before the Court: (1) whether the Chapter 7 Trustee is entitled to the maximum fee of $61,657.01, pursuant to 11 U.S.C. § 326(a); and (2) whether Trustee's Coun-

sel should be awarded his final attorney fee request of $15,716.50, or whether he should be required to disgorge all, or a portion, of the interim attorney fees previously awarded. There is no objection to the requests for reimbursement of expenses by either Trustee's Counsel or the Trustee.

## DISCUSSION

### (1) Is the Chapter 7 Trustee entitled to the maximum fee of $61,657.01?

■ The Trustee filed his Final Report on January 12, 2000. The Final Report contained a Summary of Estate, wherein the Trustee set forth an extremely brief narrative of the duties he performed in order to justify his request for compensation. The Trustee sought the maximum fee of $61,657.01, as allowed under 11 U.S.C. § 326. The Court, sua sponte, requested that the Trustee provide a more detailed account of the services he performed given the substantial fee requested. *In re Roderick Timber Co.*, 185 B.R. 601, 605 (9th Cir. BAP 1995); Fed. R. Bankr.P. 2016(a). Although neither the U.S. Trustee nor creditors objected to the Trustee's fee request, a court has an independent duty to evaluate professionals' fees. *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 841 (3rd Cir.1994); *Grassmueck v. Zamsky (In re E Z Feed Cube Co.)*, 123 B.R. 69, 73 (Bankr.D.Or.1991) (citing *In re Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir.1985)); *In re First Software, Corp.*, 79 B.R. 108, 111 (Bankr. D.Mass.1987).

■ A trustee seeking compensation has the burden of establishing that he or she is entitled to the fees requested. In order to receive compensation for services rendered and reimbursement of expenses, the trustee must file a detailed application with the court. Fed. R. Bankr.P. 2016(a). The bankruptcy judge has wide discretion

---

1. The Final Report indicates the Trustee received $26,319.82 as determined by the U.S. Trustee; however, the Court's orders indicate only an interim award of $25,000.

in determining reasonable compensation. *In re Financial Corp. of America,* 114 B.R. 221, 224 (9th Cir. BAP 1990), *aff'd,* 946 F.2d 689 (9th Cir.1991). The court must evaluate the sufficiency of the evidence provided by the trustee in support of the fee application and take into consideration whether the overall fee is reasonable under 11 U.S.C. § 330(a). Due to the nature of the trustee's responsibilities, the court may determine that the trustee need not keep time records as detailed as those of an attorney. *See, e.g., In re Missionary Baptist Found. of America,* 77 B.R. 552, 554 (Bankr.N.D.Tex.1987). Where a trustee was occupied operating an ongoing business and attempting to reorganize the debtor, it was "not realistic to expect the Trustee to prepare a time slip on each function that he perform[ed] during the day." *Missionary Baptist,* 77 B.R. at 554. In every case, however, " 'a court should only award fees to the level that has been proven to be actual, necessary and reasonable. Any lesser requirement would make the applicant's burden of proof a mere shell.' " *Roderick Timber,* 185 B.R. at 606 (quoting *In re Evangeline Refining Co.,* 890 F.2d 1312, 1327 (5th Cir.1989)).

A trustee seeking compensation has no greater status than other professionals that request fees. In fact, the trustee may be considered to have a lesser status due to 11 U.S.C. § 326, which sets forth a maximum cap on trustee compensation. With this cap in mind, a court must still review the trustee's services under a reasonableness standard set forth in 11 U.S.C. § 330(a). For a court to conduct this type of careful review, a trustee's application must set forth sufficient detail so that the court and parties in interest can evaluate the services performed in accordance with the applicable statutes. As the trustee bears the burden of proof in a fee application matter, it is not asking too much of the trustee to clearly inform the court as to the work that he or she performed.

The Trustee, in this case, has been able to detail 89 hours of time he expended, and 21.5 hours his assistant expended, in fulfilling his duties as the Chapter 7 Trustee. The Trustee reconstructed the time after the Court requested a detailed statement of time spent and services performed. The Trustee also has indicated in a supplementary affidavit that 39.65 hours were spent for "basic case administration" and that his total time easily may have exceeded 500 hours. The Trustee, however, did not detail either the basic administration time or the 500 hours of time, except for general references to services he performed in conducting the first meeting of creditors, answering telephone calls, setting up payroll information, organizing files, and making final deposits for payroll checks. These non-detailed statements of general services performed by the Trustee are difficult for this Court to review because these services are broadly lumped together within a single time block. Submitting details in this manner unfairly requires that the court somehow unilaterally place a value on such services, without any insight as to the scope and incremental time spent in the performance of the trustee duties referenced. *In re Neill,* 242 B.R. 685, 690 (Bankr.D.N.D. 1999). While a lack of contemporaneous records should not automatically result in a denial of all fees, the court should award only fees that have been proved to be actual, reasonable, and necessary. *Evangeline Refining,* 890 F.2d at 1327.

In determining the Trustee's fee, in addition to considering the Trustee's time records, the Court has considered the services performed by Trustee's Counsel for which Trustee's Counsel seeks, or already has been awarded, attorney fees. In reviewing the Trustee's and Trustee's Counsel's time records, the Court has observed that both the Trustee and Trustee's Counsel expended substantial time answering telephone calls from creditors and employees, working on payroll, and working on general case adminis-

tration. The distinction between attorney and trustee duties is often difficult for a court to articulate. This Court is interested in not only adequately compensating attorneys who are appointed in bankruptcy cases in order to encourage competent counsel to chose bankruptcy as an area to practice, but in insuring that the costs of administration do not consume all of the assets that would have been available to creditors. Given the complex tasks a Chapter 7 Trustee is required to perform, a precise demarcation is often difficult. *In re Leslie,* 211 B.R. 1016, 1018 (Bankr. M.D.Fla.1997). It can be stated, however, that an attorney for the trustee generally would be limited to representing the trustee in contested matters, adversary proceedings, specialized matters involving legal analysis or court attendance, and the preparation of most pleadings. *In re Holub,* 129 B.R. 293, 296 (Bankr.M.D.Fla. 1991). To that end, a court must be mindful that trustee duties are in fact performed by the trustee and not by the trustee's attorney.

In this case, the Court finds that Trustee's Counsel has billed the bankruptcy estate for time expended in performing trustee duties under 11 U.S.C. § 704. For example, Trustee's Counsel and his firm expended substantial time working on payroll and tax matters that could have been performed by the Trustee with the assistance of a bookkeeper or accountant. Furthermore, Trustee's Counsel billed additional time to the estate for reviewing the Debtor's bankruptcy schedules, preparing for and attending the § 341 meeting, preparing the Trustee's reports of sale, assisting in the preparation of the Trustee Forms 1 and 2, reviewing the claims register, participating in general preparatory work with the liquidator/auctioneer, drafting simple objections to claims, (*see, e.g., In re Perkins,* 244 B.R. 835, 843, (Bankr. D.Mont.2000)), collecting outstanding accounts receivable, initially analyzing the Debtor's records for possible preferences, and answering general questions from creditors and employees. Trustee's Coun-

sel also billed the estate substantial time for trustee work in making interim distributions to professionals and creditors.

While it is clear the Trustee's Counsel has billed the estate for performing trustee duties, this is not to say that the Trustee's Counsel performed all, or even a substantial part, of the Trustee's general duties. It does call into question, however, the total time spent by the Trustee and whether Trustee's Counsel may be compensated at attorney rates for performing trustee duties. At the commencement of a case, it is incumbent upon the trustee and the trustee's attorney to set procedures whereby trustee duties are performed by the trustee, and not the attorney, so that each is performing the job that he or she was appointed to perform. For example, at the start of a case, the trustee should implement a system whereby routine calls from creditors, employees, and other parties seeking information should be routed through the trustee, not the attorney. The trustee is generally expected to perform the preparatory work to collect receivables, analyze preferences, hire professionals, liquidate assets, and answer inquiries from creditors, employees, and professionals related to the administration of the estate.

Nonetheless, this Court recognizes that the Trustee in this case acted promptly once he was notified of his appointment. He secured the premises, calmed the employees, rapidly liquidated the assets of the corporation, and assisted in the preparation of the final payroll and interim disbursements. Through the Trustee's quick work in this case, unsecured creditors should receive in excess of a 20% dividend on their claims.

Reviewing the application for compensation filed by the Trustee, the Trustee did not ask to be compensated at an hourly rate, but merely requested the maximum allowed fee. The Trustee is an experienced Chapter 7 Trustee, but is not an attorney or accountant. The Trustee detailed 89 hours that he personally spent on this case. This equates to hourly compen-

sation of approximately $693, considering the maximum allowable fee under 11 U.S.C. § 326(a). Allowing all of the time detailed for himself and his assistant, as well as the 39.65 hours requested for "basic case administration," would equate to approximately $411 per hour.

■ In preparing to decide the issues surrounding the Trustee's requested compensation, as well as objections to Trustee's Counsel's requested compensation, the Court has exhaustively reviewed the case files, pleadings and applications of both the Trustee and Trustee's Counsel. Based thereon, the Trustee is awarded total compensation of $40,000. In awarding this amount, the Court has considered the result obtained for creditors, due in part, to the Trustee's prompt action. Further, the Trustee will have additional work to perform to complete an amended final report. At the same time, however, the Court also has considered that a substantial portion of the funds to be disbursed were merely a result of liquidating personal property and passively collecting receivables and interest income, and not due to extraordinary trustee work. Additionally, the Trustee's time records are minimal, despite being previously advised by the Court that case law required contemporaneous time records. Lastly, in many instances, Trustee's Counsel performed trustee work, for which the estate was billed and for which Trustee's Counsel received interim compensation. This should have been evident to the Trustee on only a cursory review of the fee application filed by Trustee's Counsel. The Trustee has received an interim disbursement of $25,000 and shall be entitled to an additional $15,000, for total Trustee compensation of $40,000, plus his expenses, on the approval of his amended final report.

**(2) Should Trustee's Counsel be awarded his final attorney fee request of $15,716.50, or should he be required to disgorge all, or a portion, of interim attorney fees previously awarded?**

It is Gunn's position that Trustee's Counsel knowingly billed word processing as paralegal services and billed for work on his Final Application that he had previously charged or written-off, thereby misrepresenting to this Court what was owed. The Court heard testimony regarding this matter from Trustee's Counsel, as well as former and current employees, and attorneys of the Landerholm firm.

The essential facts as to how the Landerholm firm processed time records and billed the bankruptcy estate are not in dispute. The most credible evidence indicates that attorneys performed substantially all research, client contact, answered questions concerning specific court procedures, and drafted documents. On a daily basis, attorneys left all transcription work with the firm's word processors, with a notation indicating the attorney requesting the work and the completion deadline. Attorneys would dictate or give to the word processors handwritten notes that contained either all necessary information to prepare an original pleading or the information that was required to complete blanks in a repeatedly used bankruptcy form, e.g., professional employment applications, applications for compensation, and claims objections. Word processors normally worked for specific lawyers in a given practice group. While word processors recorded their time, their work did not require independent substantive legal or procedural knowledge, and they were not paid productivity bonuses. Conversely, the work performed by paralegals required independent substantive legal and procedural knowledge, and paralegals, who also recorded their time, were paid bonuses based on productivity.

At the hearing, witnesses presented evidence that the Landerholm firm billed the bankruptcy estate for work performed by word processors. Witnesses who worked as word processors for the Landerholm firm testified unequivocally that they never drafted or assisted in the drafting of documents, had no special training or education

as paralegals, and never performed legal research. These word processors assumed that they were asked to keep time merely for internal cost controls. Nonetheless, when asked at the evidentiary hearing to review the time entries that had been charged to the bankruptcy estate in this case, the witnesses testified that their time entries had been altered. For example, words such as "draft," "finalize," and "analyze" had been substituted for "transcribe" on the statements filed with the Court to be billed to the bankruptcy estate. While working as word processors at the Landerholm firm, these witnesses were not asked to review their own time entries and were unaware that their time was actually being billed to the bankruptcy estate file. Indeed, Trustee's Counsel reviewed all time entries billed to the estate. The word processors did not review their entries, even though the firm billed the word processors' time as paralegal time.

Witnesses at the hearing also presented evidence that in the past, the Landerholm firm had considered its practice of billing for word processing time. In April, 1997, an associate attorney questioned whether word processing time should be charged to bankruptcy estate files. The associate attorney requested a review of this practice with an attorney who was a partner and who had served as a past president of the Landerholm firm. The matter was then brought to the attention of the current firm president and firm administrator, but the Landerholm firm did not to take any corrective action. This issue was again brought to the attention of Trustee's Counsel and select Landerholm firm partners in December, 1997, when Gunn filed an Objection to Interim Fee Application of General Counsel for Trustee. The parties settled the matter before the scheduled evidentiary hearing, with the Landerholm firm withdrawing, without prejudice, $1,432.50 in fees requested for five non-attorneys whose time had been billed to the bankruptcy estate.

Gunn also alleges that some of the word processing time incurred was duplicative, as it was billed in both the second and third application requests by Trustee's Counsel. Gunn asserts that this was intentional.

In response to the sworn testimony presented by Gunn, Trustee's Counsel opined that the firm properly billed as paralegal time the work performed by the word processors. No evidence was presented, however, that supported his testimony. Trustee's Counsel only argued that this Court should look at the market approach for the compensation requested in accordance with the holding of *Busy Beaver*. *Busy Beaver* provides that 11 U.S.C. § 330 does not bar compensation for clerical services as a matter of law. Courts must instead look to the entire compensation requested in order to determine whether the billings are typical for non-bankruptcy clients. *Busy Beaver*, 19 F.3d at 849–50. It is possible to award compensation for relatively low-level paralegal services if, and only if, analogous non-bankruptcy clients agree to pay the same, and then only at that rate. *Busy Beaver*, 19 F.3d at 852. However, the Third Circuit Court of Appeals also recognized that the U.S. Supreme Court held that "*[p]urely* clerical or secretarial tasks should not be billed *at a paralegal rate*, regardless of who performs them.'" *Busy Beaver*, 19 F.3d at 852 (quoting *Missouri v. Jenkins*, 491 U.S. 274, 288, n. 10, 109 S.Ct. 2463, 2471, n. 10, 105 L.Ed.2d 229, (1989)).

In this case, Trustee's Counsel did not accurately record the description of services by the word processors for what they were, transcription. Accordingly, creditors and the Court without specific knowledge of the Landerholm firm billing practices were lead to believe that paralegal services were actually being rendered. This deprived creditors and the Court from objecting to the payment of services rendered by word processors for transcription services only. Further, there was no

evidence that the Landerholm firm billed other non-bankruptcy clients for word processing services, or that clients are generally billed in the Vancouver market for such transcription services, which is a necessary finding under *Busy Beaver.*

The evidence further indicates that Trustee's Counsel admitted that he was aware that neither word processing time, nor time spent in completing blanks in a standard bankruptcy or tax form by word processors, is compensable in this district. He further testified that duplicate entries billed were unintentional. Trustee's Counsel emphasized that the case was complex and unsecured creditors should receive in excess of a 20% dividend; thus, he opined that if this Court ruled the time billed by the word processors was not compensable, the Court should reduce only the fee request by the duplicate entries and word processing time. Trustee's Counsel disputes that he intentionally misled this Court or the creditors. He has acted as both a Chapter 7 Trustee and attorney for the trustee for a number of years and has participated in hundreds of cases before this Court.

■ To determine what, if any, amount Trustee's Counsel should be awarded of his final attorney fee request, the Court must consider two separate questions. The first question to be addressed is whether work performed by word processors is compensable as paralegal services. Paralegal services have been defined in the bankruptcy court as follows:

According to a statement issued by the American Bar Association (A.B.A.) Standing Committee on Legal Assistants, the legal assistant or paralegal is defined as:

[A] person, qualified through education, training, or work experience, who is employed or retained by a lawyer, law office, governmental agency, or other entity in a capacity or function which involves the performance, under the ultimate direction and supervision of an attorney, of spe-cifically-delegated substantive legal work, which work, for the most part, requires a sufficient knowledge of legal concepts that, absent such assistant, the attorney would perform the task.

American Bar Association Standing Committee on Legal Assistants: Position Paper on the Question of Legal Assistant Licensure or Certification, at 4. December 10, 1985.

*In re CF & I Fabricators of Utah, Inc.,* 131 B.R. 474, 490 (Bankr.D.Utah 1991).

■ Applying this definition to the facts of this case, the only evidence presented establishes not only that the word processors did not perform paralegal services, but that they did not have the necessary legal training or substantive or procedural knowledge to charge time on bankruptcy estate files. The word processors performed only transcription services, although on occasion they may have attached exhibits to a pleading. Trustee's Counsel provided no evidence nor called any witnesses that rebutted the testimony of the word processors. This Court finds the testimony of the word processors to be extremely credible. Trustee's Counsel has failed to establish that time charged in the applications by any of the word processors, who billed time on this case, was compensable. Accordingly, approval of any paralegal time as requested in the Final Application is denied, as are the time entries that are a duplication of previous time paid or withdrawn to settle Gunn's objection to the second fee application.

■ Additionally, it is apparent that Trustee's Counsel submitted and was paid for word processor time on both his first and second interim applications for compensation. The purpose of interim compensation is to minimize economic hardship to the professionals appointed by the court, so as not to require them to finance bankruptcy cases for extended periods of time. This is to keep them on a

parity with non-bankruptcy attorneys. 3 *Collier on Bankruptcy*, ¶ 331.01 (15th ed. rev.1999). Nonetheless, interim professional fee awards are interlocutory and are not a final adjudication on the issue of compensation. *In re Callister*, 673 F.2d 305, 307 (10th Cir.1982). The orders approving interim compensation in this case provide that interim fee awards are subject to final approval with the Final Report, at the conclusion of the case. Although the "paralegal" time paid Trustee's Counsel on the first and second interim orders for compensation is minimal, Trustee's Counsel has failed to meet his burden of proof in establishing that the work underlying these fees has ever been compensable. As such, these fees are disallowed.

■ The second question to be addressed is whether Trustee's Counsel misrepresented to the Court the nature of the work for which he now seeks compensation. Gunn has alleged that Trustee's Counsel has intentionally and fraudulently represented to this Court the scope and content of the work for which he is seeking compensation. Gunn contends that the appropriate sanction for such conduct is a denial of all compensation in this case. The filing of a fraudulent fee application by an attorney for the trustee is a flagrant violation of the duty of candor to the court and fiduciary obligation owed to the estate. As such, courts have denied all compensation despite benefits that the attorney may have bestowed on the estate. *Evangeline Refining*, 890 F.2d at 1323–24. Trustee's Counsel is experienced as an attorney, Chapter 7 Trustee, and attorney for the trustee. He testified that he was aware that typing and transcribing were not compensable in bankruptcy. Having substantial experience as a trustee and attorney for the trustee, he also should have been aware that the attorney for the trustee should not perform trustee duties and then charge the bankruptcy estate at attorney rates for such services. The additional cost to the estate is self-evident in instances such as this case where the Chapter 7

Trustee has requested the maximum fee, even though Trustee's Counsel, in fact, performed many trustee duties. If the Court were to allow such "double billings," bankruptcy estates would be consumed by professional fees, which would cause creditors to have little faith in the bankruptcy system.

The evidence establishes that Trustee's Counsel reviewed the billings of all individuals charging the estate for services performed, including the word processors. The clear and convincing evidence before this Court establishes that he had personal knowledge that the word processors performed only transcription services that are not compensable in bankruptcy. Nevertheless, the time records of the word processors were changed to make the time entries appear as if the word processors were performing independent paralegal services, all without the knowledge of the word processors. The Landerholm firm had been placed on notice of this practice on at least two occasions. The Landerholm firm intentionally made a conscious decision to proceed to request compensation for services that it knew or should have known were not recoverable from the bankruptcy estate.

In conclusion, as to the second question regarding compensation for Trustee's Counsel, the clear and convincing evidence in this case establishes the following: (1) Trustee's Counsel, by approving and signing pleadings requesting compensation, was representing to this Court that he had performed his fiduciary duty to the estate in reviewing such application; (2) at the time that Trustee's Counsel made these representations in his requests for compensation regarding the compensability of the services performed by the word processors, he was aware that those individuals were performing only non-compensable transcription; (3) Trustee's Counsel intentionally requested payment for work that he knew was not compensable; and (4) although the requested non-compensable fees were small in comparison to the legal

work performed, the estate and the integrity of the bankruptcy system as a whole was injured as a result of Trustee's Counsel's actions. These conclusions are further supported by the repeated instances in which Trustee's Counsel billed for services that were clearly to be performed by the Trustee, as well as repeated instances of double billing. Trustee's Counsel, as attorney for the Trustee, was acting as a fiduciary, and he must be held to the highest standards. *Evangeline Refining,* 890 F.2d at 1323. As an attorney, he is also an officer of the court. "A bankruptcy court must be able to rely on the veracity of the representations made by an attorney in an application for employment." *In re Lewis,* 113 F.3d 1040, 1045 (9th Cir.1997). Merely reducing the requested compensation by the amount of the double-billing, non-compensable transcription work and by the trustee duties performed is not a sufficient deterrent to such overreaching conduct. The bankruptcy court has wide discretion over whether to allow fees, regardless of their excessiveness or reasonableness. *Lewis,* 113 F.3d at 1046. It is important that the integrity of the bankruptcy system is maintained.

This Court concludes that for the reasons set forth above, Trustee's Counsel and the Landerholm firm are denied the compensation requested in the third and final application, and further that they shall disgorge all interim attorney fees, less expenses, previously received within thirty days of the entry of the May 23, 2000 Order on Compensation of Chapter 7 Trustee and Trustee's Counsel.