**In re GROSSWILER DAIRY, INC., Debtor.**

No. 99–50950–11.

United States Bankruptcy Court, D. Montana.

Aug. 31, 2000.

---

11. Counsel who argued this matter has since withdrawn.

Alan C. Bryan, Crowley, Haughey, Hanson, Toole & Dietrich, PLLP, Billings, MT, for debtor.

## *ORDER*

RALPH B. KIRSCHER, Bankruptcy Judge.

Pending in this Chapter 11 case are four applications for professional fees filed by Crowley, Haughey, Hanson, Toole & Dietrich, P.L.L.P. hereinafter referred to as ("Crowley"), attorneys for the Debtor–in–Possession ("DIP"); Ken Kettinger ("Kettinger") of Kettinger & LaVoie, accountants for the DIP; Watts and Associates Inc., ("Watts"), economic consultants for the DIP; and Michael C. Dailey of Dailey Appraisal ("Dailey"), appraiser for the DIP. All four fee applications seek compensation from the estate pursuant to 11 U.S.C. § 330(a) for professional services rendered. After due notice, a hearing on Crowley's, Kettinger's and Watts' applications was held at Missoula on July 11, 2000. Crowley attorney Alan C. Bryan ("Bryan") appeared in support of the three fee applications. Ken Kettinger, Daniel D.

Johns ("Johns") and Tim J. Watts each appeared and testified. Several exhibits were admitted into evidence.

The U.S. Trustee filed comments to Kettinger's fee application on June 6, 2000, and was represented at the hearing by attorney Daniel P. McKay ("McKay") in opposition to allowance of Kettinger's fees for "typing, copy, assemble, mail financial statement,"[1] and for Kettinger's involvement in developing a marketing plan for DIP's property and negotiating with creditors, which McKay asserts "are outside the scope of activities normally performed by accountants in Chapter 11 cases." McKay stated that the U.S. Trustee had no objections to the applications submitted by Watts or Crowley. The U.S. Trustee has not filed a response to Dailey's application. At the close of the hearing the Court took the fee applications under advisement. After reviewing all four fee applications, the record, and applicable law, these matters are ready for decision.

Kettinger filed its application on May 11, 2000, requesting accountant's fees and costs totaling $19,664. Crowley and Watts filed their application on June 7, 2000. Crowley requests an award of attorneys' fees in the sum of $98,732.25 and costs in the sum of $4,665.24. Watts requests an award of professional fees in the sum of $23,299.75 and costs in the sum of $1,483.85. Dailey filed his fee application on May 18, 2000, requesting an award of appraiser fees in the sum of $3,820. The Court entered an Order on May 31, 2000, denying Dailey's application for lack of a detailed billing statement, and granted Dailey leave to refile. Dailey filed its final fee application on June 27, 2000, including a billing statement showing ten real estate appraisals conducted in January and February, 2000. Because all four fee applications request awards of professional fees under § 330(a) from this Chapter 11 es-

tate, this Order addresses all four applications.

## BACKGROUND FACTS

The DIP is one of the largest dairy operations in Montana, and a farming entity and major employer in the Flathead Valley in Montana. DIP filed its Chapter 11 petition on April 15, 1999. The Crowley firm filed its employment application as attorney for the DIP on April 23, 1999, and an Order was entered the same date approving its employment.

The Crowley attorneys include Bryan, Malcolm H. Goodrich ("Goodrich"). Kurt Alme ("Alme"), and Daniel D. Johns ("Johns"). Marilyn J. Bennet ("MJB") is a paralegal employed by Crowley for whom it seeks total fees of $1,692 for work performed in this case. Johns has represented the DIP as attorney since the 1960's, before he became associated with Crowley. Given his long relationship with the DIP's president Starling V. Grosswiler ("Starling") and her family, she relied and depended upon Johns' opinion and counsel to explain the various legal issues to her. Goodrich and Bryan are Crowley specialists in bankruptcy law. Alme practices in the area of taxation.

Like Johns, Ken Kettinger's professional relationship with Starling as the DIP's accountant dates back several decades, and as Starling's confidant she relied on his opinion and advice. Ken and Johns would each advise Starling during the course of this case to help her understand the issues involved in DIP's reorganization. Kettinger retained all of the DIP's records, and was the only source of information for Watts and Crowley when they needed the DIP's corporate, financial and tax documents.

The DIP submitted a Chapter 11 Plan and Disclosure Statement on December 13, 1999, and filed a First Amended Plan on February 4, 2000. At a hearing held on

---

1. Kettinger's billing statements show monthly entries from June 1999 through February 2000 identifying 3 to 4 hours per entry for such clerical services, totaling 32.3 hours. For this time, Kettinger requests fees in the amount of $1,292.00

February 11, 2000, on confirmation of the DIP's Plan and a competing plan offered by Northwest Farm Credit Services, the parties announced settlements resolving all impediments to confirmation whereby the DIP would be able to remain in its dairy and farming business while repaying its debt through a partial liquidation of nonessential real property. The Court commended counsel for the DIP and the parties for skillful advocacy in resolving a contentious case, and entered an Order on February 14, 2000, confirming the DIP's Chapter 11 Plan and incorporating the various settlement agreements between the DIP and the creditors. In light of this background, the Court turns to the applications for compensation filed by the DIP's professionals.

## DISCUSSION

■ This Court has an independent obligation to review each application to evaluate the propriety of the compensation requested. *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 841 (3rd Cir.1994); *In re Wildman*, 72 B.R. 700, 701 (Bankr. N.D.Ill.1987).

In *Busy Beaver*, the court explained:
[T]he integrity of the bankruptcy system ... is at stake in the issue of a bankruptcy judge's performance of the duty to review fee applications *sua sponte.* The public expects, and has a right to expect, that an order of a court is a judge's certification that the result is proper and justified under the law.... Nothing better serves to allay [public perceptions that high professional fees unduly drive up bankruptcy costs] than the recognition that a bankruptcy judge, before a fee application is approved, is obliged to [review it carefully] and find it personally acceptable, irrespective of the [always welcomed] observation of the [United States trustee] or other interested parties.
*Busy Beaver*, 19 F.3d at 841 (*quoting In re Evans*, 153 B.R. 960, 968 (Bankr.E.D.Pa. 1993)).

Extensive case law has developed regarding the amount and type of information that applicants must include in their fee applications. The case of *In re WRB–West Associates*, 9 Mont.B.R. 17, 18–20, 1990 WL 517058 (Bankr.Mont.1990) summarizes:

Pursuant to 11 U.S.C. §§ 327–330 and Bankruptcy Rules 2016 and 2017, this Court has an independent judicial responsibility to evaluate fees requested from the estate. *In re S.T.N. Enterprises, Inc.*, 70 B.R. 823, 831 (Bankr.Vt. 1987); *In re Seneca Oil Co.*, 65 B.R. 902 (Bankr.W.D.Okla.1986); *In re Frontier Airlines, Inc.*, 74 B.R. 973 (Bankr.Colo. 1987). The burden of proof to show entitlement to all fees requested from the estate is on the applicant. *In re Lindberg Products, Inc.*, 50 B.R. 220, 221 (Bankr.N.D.Ill.1985). This burden is not to be taken lightly, especially given the fact that every dollar expended on fees results in a dollar less for distribution to creditors of the estate. *In re Yankton College*, 101 B.R. 151, 158 (Bankr.S.D.1989); *In re Pettibone Corp.*, 74 B.R. 293, 305 (Bankr.N.D.Ill.1987). All expenses and fees must be shown as both actual and necessary under § [330(a)(3) ] of the Code. *S.T.N.*, 70 B.R. at 834; *Yankton College*, 101 B.R. at 158; *Seneca Oil*, 65 B.R. at 912. Moreover, *In re Convent Guardian Corp.*, 103 B.R. 937, 939–940 (Bankr. N.D.Ill.1989) holds:

Bankruptcy Rule 2016 provides that "[a]n entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." (emphasis added) The Application should contain a detailed list of expenses including the date, the type and the amount. Expenses must be actual not estimates. *In re Wild-*

*man,* 72 B.R. 700, 731 (Bankr.N.D.Ill. 1987); *In re Marsh,* 14 B.R. 615, 617 (Bankr.E.D.Va.1981). An expense is necessary if it is incurred because it was reasonably needed to accomplish the proper representation of the client. *Wildman,* 72 B.R. at 731.

■ The above excerpt demonstrates that this Court is obligated to review each request for fees and costs to determine whether the applicant provides:

1. A description of the services provided, setting forth, at a minimum, the parties involved and the nature and purpose of each task;

2. The date each service was provided;

3. The amount of time spent performing each task; and

4. The amount of fees requested for performing each task.

Attached to all four fee applications are billing statements setting forth the services each Applicant provided, the dates the services were provided, and the amount of fees requested for each service.

■ Recently, the Ninth Circuit Bankruptcy Appellate Panel ("BAP") explained:

[T]he applicant must demonstrate only that the services were "reasonably likely" to benefit the estate at the time the services were rendered.

\* \* \* \* \* \*

A bankruptcy court also must examine the circumstances and the manner in which services are performed and the results achieved in order to arrive at a determination of a reasonable fee allowance.

Such examination, in general, should include the following questions: First, were the services authorized? Second, were the services necessary or beneficial to the administration of the estate at the time they were rendered? Third, are the services adequately documented? Fourth, are the fees requested reasonable, taking into consideration the fac-

tors set forth in § 330(a)(3)? *See Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc.,* 924 F.2d 955, 957–58 (9th Cir.1991). Finally, in making this determination, the court must take into consideration whether the professional exercised reasonable billing judgment. As stated in *In re Riverside–Linden Investment Co.,* 925 F.2d 320, 321 (9th Cir. 1991), "[w]hen a cost benefit analysis indicates that the only parties who will likely benefit from [a service] are the trustee and his professionals," the service is unwarranted and a court does not abuse its discretion in denying fees for those services (citation and internal quotation marks omitted).

*Roberts, Sheridan & Kotel, P.C. v. Bergen Brunswig Drug Company, (In re Mednet ),* 251 B.R. 103, 108–09 (9th Cir. BAP 2000). Applying the above standards in the instant case, the Court turns to the four pending fee applications.

**A. Dailey Application**

■ Dailey's second fee application includes a billing statement showing ten appraisals conducted by Dailey: Four appraisals of vacant land described as "river lots" at $262.50 apiece performed on February 2, 2000; one appraisal of a "pond site" on January 27, 2000, billed at $475; four appraisals of residential land performed on January 28, 2000, and February 1, 2000, billed at $425; and one appraisal of vacant land on January 27, 2000, billed at $475. Dailey requests costs of $120 for additional copies of the appraisals requested by attorneys.

The DIP's reorganization was based upon the liquidation of such nonessential properties. In the absence of any objection, the Court finds that Dailey's fees and costs were authorized, were necessary and beneficial to the administration of the estate at the time they were rendered, are adequately documented, and are reasonable taking into consideration the factors set forth in § 330(a)(3). *In re Mednet,* 251 B.R. at 108–09. The Court will award

Dailey's fees in the sum of $3,700 and costs in the sum of $120 as requested.

### B. Watts Application

■ Watts application requests fees in the sum of $23,299.75 and costs in the sum of $1,483.85. For the most part, the Court finds that Watts' fees and costs were authorized, were necessary and beneficial to the administration of the estate at the time they were rendered, are adequately documented, and are reasonable taking into consideration the factors set forth in § 330(a)(3). *In re Mednet*, 251 B.R. at 108–09. In particular, the Court notes that Watts exercised appropriate and reasonable billing judgment by deleting charges for several hours of services. *Id.*

The only exception is Watts' billing of February 10, 2000, for six hours of travel time from Bozeman to Missoula. Driving time between Bozeman and Missoula reasonably should not exceed three hours, driving at or below the legal speed limit. The Court finds that Watts' charge for six hours of travel time is not reasonable under § 330(a)(3). *In re Mednet*, 251 B.R. at 108–09. The Court disallows 3 hours for Watts' travel time, or $165, and otherwise finds that Watts' request for fees and costs is reasonable and necessary for the estate.

### C. Kettinger Application

Kettinger's application seeks a total of $19,664, including 32.3 hours billed at $1,292 for typing, copying, assembling and mailing monthly financial statements from June 1999 through February 2000. The U.S. Trustee objects to allowance of such clerical fees and costs, and also objects to Kettinger's time involved in preparing the Plan and Disclosure statement, developing a marketing plan and negotiating with creditors. At hearing, McKay admitted the exemplary job the DIP's professionals performed, and the results obtained in this case.

Kettinger testified about his 40–year relationship with Starling, and his representation of the Debtor and Starling's family as their accountant. He admitted billing in-house clerical services for his secretary at the rate of $40 per hour, but has never before practiced in a bankruptcy case as accountant. He testified that he is unable to break out his firm's actual costs. Bryan admitted that Kettinger used Crowley's billing format, and that Kettinger had not been informed by Crowley of this Court's rule concerning billing for clerical services . .

■ The burden to show market acceptance and rate for professional and paraprofessional services is on the applicant. *In re Vulk*, 18 Mont.B.R. 137, 141–42 (Bankr.Mont.2000). *Busy Beaver* explained that courts should utilize a "market billing approach" in determining whether to award fees for paralegals and/or legal secretaries, rather than always including clerical services in overhead. *Busy Beaver*, 19 F.3d at 852–854.

Under the market billing approach and without evidence of long-standing practices of billing for clerical services or of a general nonbankruptcy business practice of billing for such services, *Busy Beaver* does not require the allowance of hourly rates or expense charges for typing, copying, assembling, and mailing. This Court's practice is to disallow expenses for clerical services such as typing or copying absent an adequate showing under § 330(a). *Vulk*, 18 Mont.B.R. at 141–42. The U.S. Supreme Court held that "[p]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288, n. 10, 109 S.Ct. 2463, 2471, 105 L.Ed.2d 229, (1989); *Busy Beaver*, 19 F.3d at 852; *Vulk*, 18 Mont.B.R. at 141–42, n. 1; *see also In re Columbia Plastics, Inc.*, 251 B.R. 580, 588–90 (Bankr. W.D.Wash.2000) ("[N]either word processing time, nor time spent in completing blanks in a standard bankruptcy or tax form by word processors, is compensable in this district").

■ In sum, the disallowance of Kettinger's charge of $1,292 for 32.3 hours associated with typing, copying, assembling and mailing is appropriate and justified for Kettinger's failure to satisfy § 330(a). However, because of the exemplary results of this case, Kettinger's direct involvement with informing the client of accounting issues as they affected this bankruptcy case and Bryan's admission that it was the Crowley's failure to advise Kettinger of the requirements for allowance of clerical services, the Court will exercise its discretion and allow Kettinger's request for clerical services by deducting the $1,292 requested for clerical services from Crowley's fee request.

■ Kettinger requests $600 for 7.5 hours on 7/14/99 for a trip to Missoula for a court date. This Court allows travel time at one half the normal hourly rate. *In re Bob's Supermarkets, Inc.*, 12 Mont. B.R. 114, 123 (9th Cir. BAP 1992). Accordingly, the Court disallows $300 from Kettinger's fee request for travel. With respect to the remainder of Kettinger's requested fees, the Court finds that Kettinger's services were authorized, were necessary and beneficial to the administration of the estate at the time they were rendered, are adequately documented, and are reasonable taking into consideration the factors set forth in § 330(a)(3). *In re Mednet*, 251 B.R. at 108–09. Kettinger's participation in preparing the Plan and Disclosure statement, developing a marketing plan, and negotiating with creditors was reasonable and necessary because of his relationship and ability to explain matters to the DIP's president.

### D. Crowley Application

The Crowley firm requests fees in the sum of $98,732.25 and costs in the amount of $4,665.24, for services provided by nine Crowley attorneys, and one paralegal. Crowley's fee application includes a de-tailed billing statement setting forth the services provided and costs incurred. With the following two exceptions, the Court finds that Crowley's billing statement provides adequate detail.

■ Crowley requests a total of $1,692.00 for services by MJB, a paralegal. The Court finds that the fees requested for MJB are reasonable and necessary, except for an entry dated 5/03/99 for .6 hours and $42 for "[c]ontinue entering data for bankruptcy documents". The Court deems that entry nothing more than clerical services which fail to establish reasonableness for charging a paralegal rate, and it is disallowed. *See In re Columbia Plastics, Inc.*, 251 B.R. at 588–90.

■ In addition, the Court disallows Bryan's entry dated 5/6/99 of $90 for .1 hours for "[t]elephone call from Daniel McKay of the U.S. Trustee's office." In the first place this charge is the equivalent of $900 per hour, which exceeds the local rate for counsel allowed by this Court. *In re Bob's Supermarkets, Inc.*, 12 Mont.B.R. at 122. Second, inadequate detail exists of the purpose of the call and thus Crowley failed its burden of showing that it was reasonable and necessary for the estate. Bryan's $90 charge for 5/6/99 is disallowed.

The Court notes that the Crowley attorneys demonstrated appropriate and reasonable billing judgment by deleting charges for several dozens of hours of services they provided for this estate. *In re Mednet*, 251 B.R. at 108–09. Crowley's services resulted in a confirmed Chapter 11 Plan, and its services were as described by McKay: "Exemplary".

Crowley's billing statements show several hours of intraoffice attorney conferences by the Crowley attorneys. The Court finds that Goodrich, Johns, Bryan, Alme, and Ashley S. Burleson engaged in a total of 23.7[2] hours of intraoffice conferences for which Crowley billed a total of $2.959.

---

**2.** Entries for intraoffice conferences are shown by the billing statements on April 8, 13, and 30, 1999; October 4 and 26, 1999; November 1, 8, 9, 11, 22, 23, 29, and 30,

In general, no more than one attorney may charge the estate for intraoffice conferences, meetings and court appearances unless an adequate explanation is given. *In re Bob's Supermarkets, Inc.*, 12 Mont.B.R. at 121–22 (*quoting In re Adventist Living Centers, Inc.*, 137 B.R. 701, 717 (Bankr.N.D.Ill.1991)). Entries for attorney office conferences must be intricately scrutinized. *In re Bob's Supermarkets, Inc.*, 10 Mont.B.R. 240, 242, 146 B.R. 20, 22 (Bankr.Mont.1992), *aff'd, In re Bob's Supermarkets, Inc.*, 12 Mont.B.R. at 121–222. Such fees will be disallowed where they involve duplication of effort. *In re Crown Oil, Inc.*, 18 Mont.B.R. 169, 170, 257 B.R. 531 (Bankr.Mont.2000).

Johns testified that he has represented the DIP since the 1960's, before he became associated with the Crowley firm. He testified that because of his long-time personal relationship DIP's president, Starling V. Grosswiler, she relied on his opinion and Johns' participation in conferences was necessary, just as Kettinger's participation was to explain technical matters to her in the confidence developed in their long-term relationship. Johns also personally knew the appropriate persons in government zoning positions whose permission were needed as part of the liquidation strategy.

This case involved Crowley attorneys with different specializations, and given Johns' personal relationship with Starling a certain amount of attorney conferences in this case is not unreasonable. Based upon the results obtained, and the Court's reduction of Crowley's fees by $1,292 to reflect Kettinger's clerical fees based upon Crowley's admitted fault, the Court will allow the remainder of Crowley's fees and costs requested, finding that Crowley's fees and costs were authorized, were necessary and beneficial to the administration of the estate at the time they were rendered, are adequately documented, and are reasonable taking into consideration the

factors set forth in § 330(a)(3). *In re Mednet*, 251 B.R. at 108–09.

IT IS ORDERED the application for professional fees and costs filed by Crowley, Haughey, Hanson, Toole & Dietrich P.L.L.P. on June 7, 2000, is granted in part and denied in part; Crowley is awarded a total of $97,308.25 for attorneys' fees and costs in the sum of $4,665.24, payable as administrative expenses of the estate.

IT IS FURTHER ORDERED the application for professional fees and costs filed by Watts and Associates, Inc., on June 7, 2000; is granted in part and denied in part; and Watts is awarded $23,134.75 in professional fees and costs in the sum of $1,483.85, payable as administrative expenses of the estate.

IT IS FURTHER ORDERED the application for professional fees and costs filed by Michael C. Dailey of Dailey Appraisal, on June 27, 2000; is granted; and Dailey is awarded $3,700 in professional fees and costs in the sum of $120, payable as administrative expenses of the estate.

IT IS FURTHER ORDERED the application for professional fees and costs filed by Kettinger & LaVoie on May 11, 2000; is granted in part and denied in part; and Kettinger is awarded $19,364 in professional fees and costs, payable as an administrative expense of the estate.

1999; December 16, 1999; January 20 and 26, 2000; and February 1 and 15, 2000.