In re **KENNEDY MANUFACTURING,** Debtor.

No. 04–30794.

United States Bankruptcy Court, N.D. Ohio.

Aug. 23, 2005.

W. Timothy Miller, Cincinnati, OH, for Debtor.

## DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

Before this Court is the Final Application of Taft, Stettinius & Hollister LLP, Counsel for Debtors, for Allowance of Compensation and Reimbursement of Expenses. Respectively, the sum of remuneration sought is $628,749.60 for fees and $34,537.29 for expenses. Objections thereto were filed. But, of the objectors, only the United States Trustee attended the Hearing held on this matter whereat it set forth specific grounds for its objection. At the conclusion of the Hearing, the Court afforded the Parties with an interest in this matter the opportunity to set forth in detail their respective positions through briefs submitted to the Court. The Court is now in receipt of these briefs, and after having reviewed the arguments raised by the Parties, as well as the applicable evidence and law, the Court herein renders its Decision.

## DISCUSSION

The law firm of Taft, Stettinius & Hollister, as professionals employed by the Debtors under § 327, seek remuneration for the services they performed for the Debtors and the estate pursuant to § 330. As matters involving the allowance of fees and expenses under § 330 directly concern the administration of the estate, this matter is deemed a core proceeding over which this Court has been conferred with the jurisdictional authority to enter final orders. 28 U.S.C. §§ 157(b)(2)(A), 1334.

Subject to certain statutory limitations, § 330(a)(1) of the Bankruptcy

Code provides that a court may award to a professional person, a law firm included, "reasonable compensation for actual, necessary services rendered by the ... attorney and .... reimbursement for actual, necessary expenses." Section 330(a) then goes on to set forth a number of considerations and restrictions a court is required to consider when making a determination on the propriety of a professional's fees and expenses. In conducting such an analysis, a professional's fee application is afforded a presumption of correctness so long as it contains information sufficiently detailed to examine it under the light of § 330(a)'s criteria. *In re Blackwood Associates, L.P.*, 165 B.R. 108, 112 (Bankr. E.D.N.Y.1994). Yet when, as here, an objection is raised, the overall burden of establishing the compensability of the services for which remuneration is sought will fall upon the fee applicant. *Prebor v. Collins (In re I Don't Trust)*, 143 F.3d 1, 4 (1st Cir.1998). And to the extent that the fee applicant fails to meet their burden, § 330(a)(2) authorizes that the "court may ... award compensation that is less than the amount of compensation that is requested."

In this matter, the objection of the United States Trustee to the professional fees sought by Taft, Stettinius & Hollister under § 330 may be grouped into four categories: (1) time related to billing for commencing this case in an improper venue; (2) time spent by various professionals on the retention of Newmarket Partners as a financial advisor for the Debtors; (3) excess time spent in both preparing and then amending the Debtors' schedules; and (4) excess time spent preparing the Debtors' plan and disclosure statement. (Doc. No. 651).

With respect to the first category, it is the position of the United States Trustee that those services attributable to venue must be completely disallowed. In this regard, the record shows that this case was originally commenced in an improper venue, that being in the Southern District of Ohio, Dayton, but that the case was subsequently transferred to this Court after an objection to venue was lodged. In this way, the United States Trustee "questioned whether this work provided [any] benefit to the bankruptcy estates and should be compensable." (Doc. No. 651, at pg. 2).

The allowance of a professional's fees under § 330(a) permits such costs to be paid from the estate ahead of all other unsecured claims. 11 U.S.C. § 503(b)(2), § 507(a)(1). Intuitively then, the United State Trustee is correct in its effort to match the compensability of a professional's services under § 330(a) with a commensurate benefit being accorded to the estate. Yet, practicalities cannot be ignored.

Often, a debtor is most vulnerable during the initial stages of the bankruptcy process. And as a result, a professional employed by the debtor-in-possession is frequently called upon to make on-the-spot decisions which although objectively sensible at the time, may seem less prudent when both more information becomes available and additional events unfold. With then this realization, and under the adage that indecision is more detrimental than making a decision, § 330(a) seeks to encourage professionals to not unnecessarily delay in making judgments by providing that their decisions will not be second guessed under the light of hindsight. *In re Holub*, 129 B.R. 293, 297 (Bankr. M.D.Fla.1991) (internal quotation omitted) (courts are not to "second guess the professional by substituting its judgment after the fact for that of the professional who was called upon to exercise judgment on the spot.").

■ On whole then, the compensability of a professional's fees under § 330(a), while closely linked, is not actually tied to the services benefitting or otherwise adding value to the debtor's estate. Rather, a court is to afford a degree of deference to the professional's decision so long as objectively reasonable at the time. Two provisions of § 330(a) specifically play this out.

■ First, § 330(a)(3)(C) directs that "[i]n determining the amount of reasonable compensation to be awarded, the court" is required to consider "whether the services were necessary to *the administration of*, or beneficial *at the time at which the service was rendered* ... [.]" (emphasis added). It is then directed under § 330(a)(4)(A) that a court must disallow the compensability of a professional's fees from the estate, to the extent that such "services that were not *reasonably likely* to benefit the debtor's estate" or "necessary to the administration of the case." 11 U.S.C. § 330(4)(A)(ii)(I)/(II). (emphasis added). Therefore, by looking first to "the time at which the service was rendered" and then to whether such services were "reasonably likely" to benefit the estate, the pertinent question is not whether the services performed by the professional conferred an actual benefit upon the estate; but whether, when viewed under the circumstances in existence at the time, the services were reasonably calculated to benefit the estate. *In re American Metallurgical Products Co. v. Kirkpatrick & Lockhart*, 228 B.R. 146, 156 (Bankr.W.D.Pa. 1998) (conditioning the propriety of compensation on whether the services performed were reasonable at the time of rendition; not under the conditions as they existed at the time the fee application is reviewed). And under this standard, the weight of the evidence comes down on the side of Taft, Stettinius and Hollister.

■ In explaining their decision related to filing out-of-venue, Taft, Stettinius and Hollister offered a viable reason for their actions: to potentially lower expenses to the estate given that both the Debtors and counsel for the Debtors are geographically located closer to the Dayton bankruptcy court, than to this Court. And while this tactic was ultimately unsuccessful, with the bankruptcy court in Dayton declining to take the case, such an action cannot be deemed to have been unreasonable at the time. Seeking to lower costs to the estate, if done within the confines of applicable law, is obviously a legitimate goal, and venue is not jurisdictional, and thus may be waived.

Just as important, the amount of time spent on this issue was not large,—only 11.6 hours. And once it became apparent that their tactic was not likely to bear fruit, Taft, Stettinius and Hollister immediately ceased pursuing the issue (such as by appealing), thereby minimizing the cost to the estate. Thus, when all things are considered, the services performed by Taft, Stettinius and Hollister related to venue may be viewed, at the time, as reasonably calculated to benefit the estate. Hence, those fees related to this matter will be allowed.

■ The Court, however, does not take such a favorable view of those fees charged by Taft, Stettinius & Hollister in connection with having a financial advisor, Newmarket Partners, appointed as a professional under § 327. Counsel for the Debtors are experienced bankruptcy practitioners, and have billed accordingly—lead counsel charges $300.00 per hour. Overall, the Court, through its observations of Counsel, has no cause to question the experience and expertise of Counsel, and hence their hourly billing rate. But when billing at a rate commensurate with a high level of expertise, it is expected that mis-

steps and hence costs that could be incurred by otherwise less experienced counsel will be subsumed into the higher billing rate. The billing done with respect to the retention of Newmarket Partners, however, does not fit this mold.

In seeking to employ Newmarket Partners, Counsel for the Debtors did not file an application for employment until a full two weeks after Newmarket had commenced their services, thus requesting in their application, a *nunc pro tunc* order so as to retroactively sanction Newmarket's employment. But the Court denied the application, in part, based upon Counsel's tardiness in filing its application for employment, stating:

> Both New Market, and counsel for the DIP are experienced in bankruptcy matters, and thus are fully aware of the filing and disclosure requirements imposed by 11 U.S.C. § 327 and Bankruptcy Rule 2014. The only basis, however, offered to the Court for the failure to comply with these requirements was a concern of adding cost to the estate. This argument, however, is specious as it would have the effect of subsuming the exceptions with the rule. Consequently, the DIP has not met its burden of showing that there exist "extraordinary circumstances" so as to justify entering an order on a *nunc pro tunc* basis. In this regard, "extraordinary circumstances" "do not include the mere neglect of the professional who was in a position to file a timely application."

(Doc. No. 288, at pg. 2) (internal citation omitted).

Yet, despite this rebuke in appointing Newmarket Partners as professionals, Counsel for the Debtors still seek at this conjuncture to recover a significant amount of fees—$10,854.00 as the result of 52.4 billable hours—for the time they spent in their dealings with Newmarket.

(Doc. 655, at pg. 2). Beside going contrary to the spirit of § 330, which first and foremost conditions the approval of fees on the proper appointment of the professional under § 327, it does not mesh with the following two considerations a court is required to consider when determining the reasonableness of a professional's compensation:

> whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
>
> whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(D)/(E). Accordingly, given these concerns, those fees sought by Taft, Stettinius & Hollister, LLP in connection with its dealings with Newmarket Partners must be disallowed in their entirety.

Unlike the previous discussion, the last two categories of objections raised by the United States Trustee involve not the nature of the services rendered, but rather the cumulative scope of the time involved. Specifically, the United States Trustee puts forth that Taft, Stettinius & Hollister engaged in the "excessive and improper use of multiple professionals" to handle matters related to preparing and then amending the Debtors' schedules, and then later preparing the Debtors' plan and disclosure statement. (Doc. No. 639, at pg. 6). To use but one example, the United States Trustee pointed out that the "Final Application reflects that three partners, five associates, three paralegals and one staff member designated as 'technology' recorded time under the Case Administration billing category." (Doc. No. 639, at pg. 4).

■■■ Section 330(4)(A) addresses the concerns raised by the United States Trustee by mandating that:

> Except as provided in subparagraph (B), the court shall not allow compensation for-
>
> (i) unnecessary duplication of services[.]

This provision is intended to promote the efficient use of a professional's resources. And in line with the position taken by the United States Trustee, an "unnecessary duplication of services" will occur when a law firm employed by the bankruptcy estate engages in "overstaffing." *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2nd Cir.1987). In the absence of an adequate explanation, it is the general rule that "overstaffing" will be presumed to exist, thereby requiring a reduction in fees, when more than one attorney charges the estate for intraoffice conferences, meetings and court appearances. *In re Grosswiler Dairy, Inc.*, 257 B.R. 523, 531 (Bankr.D.Mont.2000).

■■■ On the matter of "overstaffing," the concerns raised by the United States Trustee are understandable. On numerous occasions, this Court, itself, had cause for concern when Taft, Stettinius & Hollister sent more than one attorney to attend hearings on matters which clearly did not require such a collective effort. But in reviewing its final application for fees, the concerns of "overstaffing" have been tempered by two overall considerations.

First, and while not needing to delve into all of the specifics, the Court is very cognizant that Counsel for the Debtors put a lot of work into this case. And although not a prerequisite, the end result in this case also cannot be ignored: a confirmed plan of reorganization was entered by this Court permitting the Debtors to continue with its operations. *In re Unitcast, Inc.*, 214 B.R. 992, 1008–09 (Bankr.N.D.Ohio 1997) (the results obtained is a major factor in the allowance of fees), *aff'd*, 219 B.R. 741 (6th Cir. BAP 1998). The Court is also aware that this case involved areas that required the expertise of nonbankruptcy counsel—e.g., issues involving the Debtors' pension plan—and in this way, the law firm of Taft, Stettinius & Hollister, having attorneys on its staff with specialized areas of expertise, was able to offer such services at reasonable, and potentially lower costs than had the Debtors been forced to seek such services on a piecemeal basis.

Secondly, the Court is also very cognizant that Taft, Stettinius & Hollister did not seek remuneration for many of those services it rendered—in all, making a downward adjustment in its billing by approximately 20%. Consequently, when considering things as a whole, the Court is not persuaded that the law firm of Taft, Stettinius & Hollister has, through its final application for fees, sought compensation for what would amount to a violation of the "unnecessary duplication of services[ ]" prohibition of § 330(a)(4)(A)(I). *Accord In re Holub*, 129 B.R. at 297 (a court should not nickel and dime professionals in matters involving an exercise of their judgment and discretion).

In summation, of those four areas of concern raised by the United States Trustee regarding the propriety of the fees and expenses sought by Taft, Stettinius & Hollister, the Court finds one to be well-taken: that involving those fees sought in connection with Newmarket Partners. As for those other areas, the Court, while finding its concerns well-grounded, is satisfied that other factors present in this case outweigh the strengths of those points raised by the United States Trustee. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of wheth-

er or not they are specifically referred to in this Decision.

Consistent then with this Decision, it is hereby

***ORDERED*** that with the necessary adjustments, and after affording the opportunity for the United States Trustee to review, the law firm of Taft, Stettinius & Hollister shall submit to the Court a proposed final order for the allowance of their fees and expenses.